LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* LEMUEL P. CROMINARITY.

1. RAILROADS. *Crossings. Contributory negligence. Failure to stop.*

Where, in an action against a railroad company for injuries at a crossing, it appeared that plaintiff approached the crossing when no train was scheduled to pass, and that the view of the track was obstructed, except for the width of the street, and that plaintiff slowed up and looked and listened for a train, he was not guilty of contributory negligence, as a matter of law, for failing to stop.

2. SAME. *Signals. Failure to give.*

Where, in an action for injuries at a crossing, the complaint alleged negligence on the part of defendant in running a train of cars at an excessive speed through a city and in failing to give the required signals, and it appeared that, not knowing of the approach of the train, plaintiff drove very close to the railroad tracks when the train appeared and frightened his horse, whereby he was injured, a verdict for plaintiff on the theory that the negligence in failing to give signals was the proximate cause of the accident was warranted.

FROM the circuit court of Harrison county.

HON. WILLIAM T. MCDONALD, Judge.

Crominarity, the appellee, was plaintiff, and the railroad company, the appellant, defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

Plaintiff's declaration alleged "that by and through the negligence and improper conduct of the defendant corporation,

by its said agents and servants in that behalf, in running a
train of cars and locomotive at a greater rate of speed than
six miles per hour, and its failure to ring a bell or blow a
whistle, plaintiff thus receiving no warning of the approach
of the said train, plaintiff was unable to get his horse a safe dis-
tance from said track before said train crossed said street, and
said train then and there ran so close to said carriage that the
engine and cars ran right up to the nostrils of plaintiff's horse,
just grazing said nostrils, and that the concussion and frightful
rate of speed of said engine and cars caused the horse pulling
said carriage to become so frightened and unmanageable as to
then and there suddenly turn—plaintiff being unable to manage
him, although using all means at his command—thereby turn-
ing over the carriage and throwing plaintiff out upon the
ground with great violence and force, so that plaintiff was
greatly bruised, hurt, and wounded." The declaration also
alleged that this occurred in the corporate limits of the city
of Biloxi, at a much-frequented street crossing. Plaintiff's
evidence was to the effect that plaintiff was driving a gentle
horse, approaching the crossing on Reynoir street (the most-
frequented street in Biloxi, the crossing being near the rail-
road depot), on Sunday morning about eleven o'clock, when no
train was scheduled to pass; that the defendant company had
placed box cars along the railroad on both sides of the street,
just leaving the width of the street open, and greatly obstruct-
ing the view of the railroad tracks; that, on approaching the
crossing, plaintiff slowed up and looked and listened for a
train, but did not stop; that he heard no train, and saw none,
and when his horse's head got within about six feet of the
track, a train dashed by, running about thirty-five miles an
hour, without ringing a bell or blowing a whistle, and fright-
ened the horse, which suddenly turned, throwing plaintiff out
of the buggy and injuring him.

86 Miss.—30

The following instructions asked by the defendant were refused by the court:

"1. The court charges the jury that the burden is upon the plaintiff to reasonably satisfy them that the fact that the train was running more than six miles an hour frightened the horse and caused him to turn. If you are not reasonably satisfied of this, you should find a verdict for defendant.

"2. If the jury are not reasonably satisfied from the evidence whether the horse would or would not have behaved in the same way, had the train been running at the rate of six miles an hour or less, they ought to find a verdict for the defendant.

"3. The court charges the jury that the burden is on the plaintiff to reasonably satisfy them that the fact that the train was running more than six miles an hour frightened the horse and caused him to turn, and if he has failed to reasonably satisfy you of this, you ought to find a verdict for defendant.

"4. If the jury are not reasonably satisfied from the evidence whether the horse would or would not have behaved in the same way, had the train been running at the rate of six miles an hour or less, they ought to find a verdict for defendant."

*Gregory L. Smith,* and *J. W. Goldsby,* for appellant.

*L. H. Doty,* and *J. H. Mize,* for appellee.

TRULY, J., delivered the opinion of the court.

The declaration in this cause predicates the right of recovery for the injury inflicted upon the negligence of the appellant, consisting of two distinct and different, though combined and concurrent, constituents. The first ground of negligence averred is the running of a train through an incorporated city at a rate of speed far exceeding the statutory limit. The second ground of negligence is the failure to ring the bell or sound the whistle when approaching and crossing a highway

or street.   These two elements of negligence, under the proof in the instant case, were inseparably joined and integrated, and the two, operating jointly, caused the injury sued for.   The facts as developed show by a very clear preponderance of the evidence—uncontradicted at all, save by one witness, whose testimony was discredited by the jury—that on the occasion in question the employes of appellant were guilty of both the negligent acts charged in the declaration.   The train was running at an excessive rate of speed as an extra, or special, upon no specific schedule, and at an unusual time for a train to pass, over the most-frequented crossing in the city of Biloxi, without ringing the bell or sounding the whistle.   This flagrant violation of two express statutory provisions intended to regulate the operation of trains, and thereby conserve the public safety, constitutes negligence, of course; and, if the proximate cause of the injury inflicted, appellee should recover, unless his own negligent conduct contributed to the accident.

The proposition presented by the appellant, upon which hangs its chief argument, seeking to have the conduct of appellee condemned as being such contributory negligence as should absolutely preclude any recovery, is that the appellee, in approaching the crossing where the injury occurred, did not bring his horse to an absolute halt before driving on the track. Many decisions and a multitude of authorities are cited to show that other courts have held that the mere failure to stop before driving on a railroad crossing constitutes, as a matter of law, such negligence as forbids recovery for any injury inflicted by a passing train.   We decline to adopt any such rigid rule.   What constitutes negligence must depend always upon the surrounding conditions and the attendant circumstances of the particular instance.   No hard-and-fast rule of action can be prescribed which will make the same course of conduct under any and all circumstances either wise or unwise, cautious or reckless.   Instances may be imagined when to stop before driving on a track would be hazardous in the

extreme.   In other cases, driving upon a railroad track with-
out stopping would be in no degree negligent.   So, too, it must
be conceded that there are many cases where to drive upon a
crossing without first stopping would be negligence of the
grossest character.   Due caution in one instance might well
be deemed foolhardiness under different circumstances.   The
true rule is that it is incumbent upon the traveler to use that
degree of care and caution which is rendered necessary by a
reasonable regard for his safety under the peculiar circum-
stances and conditions by which he is at the time confronted.
It is the duty of a traveler, in approaching a crossing, to use
all reasonable precaution to apprise himself of the approach
of a train, but whether that reasonable precaution will demand
that he shall "stop and look and listen," or whether any lesser
degree of care on his part will be sufficient, must generally,
though not invariably, be a question of fact; and, being a ques-
tion of fact, it should be submitted to the jury, under proper
instructions, for their decision.   That course was adopted in the
case at bar.   The jury was instructed that it was the duty of
the appellee, in approaching the crossing, to have taken every
reasonable precaution, in view of the obstructed condition of
the crossing, to apprise himself of any approaching train, and
to have listened in order to ascertain if there was any such
train approaching, and that failure to observe this degree of
care would defeat recovery.   This was a correct exposition of
the law, and was fully as favorable as the appellant had the
right to demand, in view of the inexcusable negligence of its
employes and their flagrant disregard of the rights of the
public in the operation of the train causing the injury.   It
was, under the facts of this record, the province of the jury,
not the judge, to decide whether the conduct of the appellee
constituted contributory negligence.

The other assignments of error presented by appellant,
based upon the action of the court in refusing instructions, are
without merit.   The instructions refused were either erroneous,

as propositions of law, or were upon the weight of evidence, and were therefore correctly denied. The only two important questions involved in the case—namely, the negligence of the appellant and the alleged contributory negligence of the appellee—were fairly submitted to the jury, and we see no ground for disturbing their decision upon the facts.

But it is urged no recovery can be sustained for appellee in the instant case because the right of action is by the declaration based on the negligence of the employes of appellants in running the train at an excessive rate of speed, while the case was submitted to the jury on the theory that the negligent failure to give the statutory signals and warnings was the proximate cause of injury. The reasoning by which this contention is sought to be sustained is entirely too artificial and refined, and will not stand the test when scrutinized in the light of the record. The gravamen of the complaint is the negligence of the appellant. Two palpable omissions of duty, it is averred, constituted that negligence, and both contributed to the injury—the one, indirectly; the other, proximately. Had the excessive rate of speed not been coupled with the failure to give the customary signals, the accident might not have happened, because the appellee, having timely warning of the approach of the train, could have avoided the dangerous situation into which the appearance of safety entrapped him. We are not prepared to say, therefore, that the jury erred in holding that the negligence in failing to ring the bell and sound the whistle was the proximate cause of the accident.

*The judgment is affirmed.*