JESSE SKIPWITH v. MOBILE & .OHIO RAILROAD COMPANY.

[48 South. 964.]

RAILROADS.  *Highway crossings.  Signals.  Code* 1906, § 4045.

> Where a railroad company failed to give either of the statutory
> signals, Code 1906, § 4045, requiring the ringing of a bell or
> the blowing of a whistle, as its train approached a highway
> crossing and ran the train suddenly around a curve in its track
> so near a team of horses, driven by plaintiff on the highway, as
> to frighten them and make them unmanageable, resulting in a
> collision on the crossing and injury to them and the wagon to
> which they were hitched, the company is liable for damages.

FROM the circuit court of Lowndes county.

HON. ROBERT F. COCHRAN, Judge.

Skipwith, appellant, was plaintiff in the court below; the
railroad company, appellee, was defendant there.  From a judg-
ment in favor of the defendant, predicated of a peremptory in-
struction, the plaintiff appealed to the supreme court.

Plaintiff sued for damages to his horses and wagon suffered
on a highway at a railroad crossing.  In order to effect a grade
crossing with the track of the defendant company the highway
had been raised several feet above the surrounding lands, and
for several yards from the railroad track it was too narrow for
a horse and wagon to be turned back thereon.  On either side of
the highway there were trees obstructing a view of the curved
railroad track.  Plaintiff, accompanied by his two daughters,
had driven his team, attached to his wagon, along the highway
and was very near the railroad crossing when, according to his
testimony, without prior warning, so far as they heard, from
bell or whistle, or otherwise, an approaching engine and tender
attached to a caboose ran rapidly around the curve of the rail-
road track, frightening the horses so that they became unman-
ageable on the narrow elevated highway.  Plaintiff testified
that he used every effort, but was unable to hold the terrified
animals, and as they dashed forward across the track the engine
struck them and the wagon, killing one of the horses, seriously
maining the other and demolishing the wagon.  The plaintiff

and his daughters were unhurt. The testimony showed that the horses were easily manageable under ordinary circumstances, and plaintiff and his daughters testified that if they had heard any warning by bell or whistle on the engine the team could have been stopped some distance from the crossing, and the injuries avoided. The defendant railroad company pleaded the general issue, but did not plead contributory negligence on plaintiff's part. The fireman, engineer and a brakeman who were on the engine at the time of the injury, and also other witnesses for the defendant, testified that proper warnings were given in ample time before the engine reached the crossing, and that, when the peril of plaintiff was discovered by the engineer and fireman, every effort possible was made to prevent the collision but without avail. There was no affirmative evidence that plaintiff either stopped, looked or listened before reaching the railroad track; but it was shown that, after plaintiff's attention was called to the train, he drove nearer the track, stopped his team and, going in front of his horses, undertook to hold them by their bridles.

*James T. Harrison,* for appellant.

The hasty action of the learned court below in granting the peremptory instruction in favor of the railroad company was most erroneous. It is time for our bench and bar to arouse and take notice that peremptory instructions, like poison-ivy, have begun to cover our body politic with an unnatural and unhealthy growth which, if left unchecked, will in time affect the healthy condition of our jurisprudence. *Owens v. Yazoo, etc., R. Co.,* 48 South. 518; *Bell v. Southern R. Co.,* 87 Miss. 234.

The railroad company was clearly liable under the circumstances. The engine's bell and whistle, as the engine approached the fatal crossing, were as silent as the harp that hung in Tara's Hall. They were still as death, and their grim silence, as the huge engine rushed onward, caused death to the appellant's noble steed. Of course the engineer and fireman attempted to explain and show that appellant alone was liable for the injury.

But we urge the court to carefully consider such "explanation." When Coleridge had written his work on metaphysics for the English nation and had written at the front of the great work a perface which he called an "explanation," Byron bluntly demanded of him, "Colridge, explain your 'explanation.'" In like manner, the engineer and fireman should try again to explain away the great negligence of the railroad company, for they haven't done it yet. *Vicksburg, etc., R. Co. v. Phillips,* 64 Miss. 693.

No counsel appeared for the appellee until after the judgment appealed from had been reversed.

FLETCHER, J., delivered the opinion of the court.

This case in its essential aspects is controlled by the case of *Louisville, etc., R. Co. v. Crominarity,* 86 Miss. 464, 38 South. 633. If the plaintiff and his witnesses are to be believed, the accident in this case was due to the negligence of the engineer and fireman in failing to blow the whistle or ring the bell at the crossing, as by statute it was their duty to do. Travelers on the highway have a right to insist that these signals be given, not only that they may keep off the track, but that they may not drive their teams so near the track that fright will certainly follow. In this case the fright led to the killing of the horse by the train. It is true the defendant's servants denied that there was any negligence; but this conflict was for the jury and not for the court.

The peremptory instruction was improper, and the judgment is therefore *reversed* and the cause *remanded.*

*McWillie & Thompson* and *Orr & Harris,* for appellee, suggested error.

*J. T. Harrison,* for appellant responded to the suggestions of error.

*The suggestion of error was overruled by the court.*