GULF, M. & N. R. Co. *v.* HARDY.*

(In Banc. Dec. 15, 1924.)

[102 So. 66. No. 24193.]

1. RAILROADS. *Instruction basing liability for injury by frightened team on speed of train held improper.*

In a suit for damages for personal injury occasioned by frightening a team where there is no physical contact between a train and the team or the person injured, it is error to submit an instruction to the jury that they may find for the plaintiff if the train was being operated over six miles an hour in a city, and such operation was the proximate cause of the fright of the animals.

2. RAILROADS. *Railroad must use reasonable diligence to prevent injury to driver of team frightened by train.*

Where a train is being operated in a municipality, and is approaching a team stationed at a car on a team track, and the employee operating it sees the horses are frightened and that their owner is in a position of danger, and fails to exercise reasonable diligence to prevent the injury, the company is liable for the negligence of its employees in failing to do what was reasonably necessary, in view of the plaintiff's precarious situation, to prevent the injury.

*Headnotes 1. Railroads, 33 Cyc., p. 1160. 2. Railroads, 33 Cyc., p. 1149.

APPEAL from circuit court of Neshoba county.

HON. G. E. WILSON, Judge.

Suit by H. T. Hardy against the Gulf, Mobile & Northern Railroad Company. From a judgment for plaintiff, defendant appeals, Reversed and remanded.

*Flowers & Brown,* for appellant.

*Earl Richardson* and *Marion W. Reily,* for appellee.

Briefs in this case not available to the reporter.

Argued orally by *J. T. Brown,* for appellant, and *M. W. Reily,* for appellee.

PER CURIAM. The appellee sued the appellant for a personal injury. The declaration contained three counts: First, the failure to ring the bell and blow the whistle, etc., on approaching public crossings in the town of philadelphia; second, for the operation of said train at a greater rate of speed than six miles an hour within the corporate limits of the town of Philadelphia; third, that on said occasion said train was being driven at a rapid rate of speed and in a northerly direction and in the direction of plaintiff's team and defendant's warehouse, where plaintiff was unloading feed from defendant's car; that when said train was more than one hundred yards from a point on said track opposite from where said wagon was standing said train came in plain view of plaintiff's team, and the engineer or fireman upon said train saw the plaintiff and saw that the team of the plaintiff was frightened, and that there was imminent danger of said team running away and seriously injuring the plaintiff unless said train was instantly stopped; that, notwithstanding the fact that the team was in plain view of the said engineer and fireman, after the train came to a point where the said engineer and fireman saw the said team and the plaintiff, the said engineer and fire-

137 Miss.—39.

man, after seeing the position of peril of the plaintiff, recklessly and carelessly failed to stop said train, and continued to drive said train until the train was opposite the point at which said team was standing, when suddenly all of the brakes were put on the said train and the steam was caused to be emitted from same, and an unusual and startling noise was thereby made by said train, thereby increasing the terror of the horses and mules; that as a result of the negligent action on the part of employees of the defendant railroad company who were operating the said train the team became frightened and unmanageable, notwithstanding the fact that the plaintiff was doing all in his power to control said team, and the horses swung around towards the wheels of plaintiff's wagon, and caused one of the mules to fall upon the plaintiff, and broke his leg, and injured him in other places upon his body.

The facts developed by the plaintiff, that is to say, the plaintiff and his witnesses testified that a car loaded with hay was situated upon the team track of the appellant's road in the town of Philadelphia about seventy-two yards north of the depot in said town; that there were several public crossings below the depot and one crossing between the car and the depot, and that the plaintiff had gone to the car on the team track with his wagon and team, which were animals of ordinary gentleness, and was unloading feedstuff from the car into the wagon in pursuance of the practice and custom of the railroad company to so deliver its freight to its customers; that, while so engaged in unloading, the train approached the depot from the south without giving the statutory signals of sounding the whistle and ringing the bell three hundred yards from said crossing and keeping them ringing until such crossing was passed. Plaintiff also showed that the train approached at a rate of speed estimated by most of plaintiff's witnesses to be from twelve to fifteen miles an hour, and by some of the witnesses as high as twenty miles per hour, and that no

bell was rung and no whistle was blown, and that when the said engine propelling the said train got even with the depot, which was situated some fifteen or twenty feet from the track of the railroad, the engineer could see that plaintiff's team was frightened, and could see the position of plaintiff in undertaking to control and manage his team, and that, if the train had been promptly stopped, it could have been stopped before reaching the public crossing between the depot and where the plaintiff was unloading; that the engine continued to come forward, and did not make an effort to stop until it reached the public crossing, and that it finally stopped opposite the car where the plaintiff was unloading feed-stuff; that the car on the team track was seventeen steps from the track upon which the train was being operated —the main line; that it was thirty-three steps north of the public crossing between the depot and where the car being unloaded was situated.

The testimony for the defendant was that it did give the signals by sounding the whistle and ringing the bell on approaching the station, and at each of said crossings, and that the train was not moving in excess of the statutory speed limit, and that it stopped when it discovered plaintiff's peril.

The defendant requested and was granted a peremptory instruction as to the sounding of crossing signals. It requested and was refused a peremptory instruction as to the second count based upon the train being operated at a speed in excess of six miles per hour, and the case was submitted on this ground, and on the third count, to the jury under instructions. There was a verdict for the plaintiff for $8,500.

Appellant insists that the refusal of the peremptory instruction as to the second count of the declaration was error. That is, that no liability could be predicated upon the train being operated in excess of six miles per hour for the reason that there was no physical contact with the train which produced or resulted in the injury. It

is insisted that the case is controlled by *I. C. R. Co.* v. *Weathersby,* 63 Miss. 581. In that case the court gave the following instruction:

"If the jury believe from the evidence in this case that the plaintiff's mare was killed by or because of the running of a locomotive of defendant's within the corporate limits of the city of Water Valley, when said locomotive was running at a greater rate of speed than six miles an hour, then the defendant is liable for all injury and damage occasioned thereby, unless the accident was unavoidable with the exercise of reasonable skill and care on the part of defendant's servants."

In passing upon this question in that case the court said:

"The instructions asked by the plaintiff and given in the court below are applicable only in cases in which the injury has been inflicted by the 'running' of the trains of a railroad. There is no allegation in the declaration that the injury was caused by the running of the train within the meaning of the statutes on this subject, nor was there any proof from which said fact could have been found by the jury."

Four of the judges are of the opinion that that case, *I. C. R. Co.* v. *Weathersby,* 63 Miss. 581, *supra,* is decisive of the controversy here, and that there was no liability on the defendant under the second count of the declaration. Two of the judges are of the opinion that a peremptory was properly refused, and that the law of the case is in accordance with the decisions of *Y. & M. V. R. Co.* v. *Lambuth,* 74 Miss. 758, 21 So. 801; *L. & N. R. Co.* v. *Crominarity,* 86 Miss. 464, 38 So. 633; *Skipwith* v. *M. & O. R. Co.,* 95 Miss. 50, 48 So. 964. Four of the judges are of opinion that the case should have been submitted to the jury under proper instructions under the third count of the declaration. Two of the judges are of the opinion that the plaintiff should have had a peremptory instruction on all of the counts.

It follows that for the refusal of the peremptory in-
struction on the second count that the judgment must
be reversed and the cause remanded for trial on the
third count.

*Reversed and remanded.*