GULF, M. & N. R. R. Co. *v.* HARDY.*

(In Banc. June 11, 1928.)

[117 So. 536. No. 27016.]

132

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 1241, n. 40; Railroads, 33Cyc, p. 810, n. 81; p. 811, n. 86; p. 907, n. 60.

*Flowers, Brown & Hester,* for appellant.

*Reily & Parker,* for appellee.

SMITH, C. J. This is the second appearance of this case in this court. The suit is for the recovery of damages for a personal injury sustained by the appellee for which he claims the appellant is responsible.

The original declaration contained four counts, all of them setting forth in substance that the appellant owns and operates a railroad running through the town of Philadelphia, at which place, in addition to its main track and others, it has a side track running parallel with the main track, about seventeen yards therefrom, the appellant's depot being located between it and the main track. On this side track the appellant places cars containing freight to be unloaded by the consignees thereof. A public road crosses the railroad track a short distance north of the depot.

On the occasion in question a car containing "horse feed and other articles" was on the side track, north of the crossing, and about eighty-five yards from the depot. The appellee drove a wagon drawn by two mules and two horses to the car, and at the instance of the consignee, was preparing to place a portion of the contents of the car in the wagon, when the horses became frightened at a train approaching from the south, and while the appellee was endeavoring to control them, one of the mules was thrown down and on the appellee, breaking his leg.

The first count alleges the failure of the appellant's servants in charge of the train to sound the whistle or ring the bell continuously as the train approached the crossing, as required by section 4045, Code of 1906, now section 1, chapter 320, Laws 1924 (Hemingway's 1927 Code, section 7964).

The second count alleges that the train was running at greater speed than six miles per hour.

The third count alleges that the engineer and fireman failed to exercise due care to prevent injury to the appellee, after seeing that the horses were frightened, and that he was in peril.

The fourth count seems to set forth the three acts of negligence complained of in the other counts.

On the first trial the case was submitted to the jury on the second and third counts, resulting in a verdict for the appellee. The case was then brought to this court by the appellant, and reversed, because of the submission of the case to the jury on the second count of the declaration. *G., M. & N. R. R. Co.* v. *Hardy,* 137 Miss. 608, 102 So. 66.

On the return of the case to the court below a fifth count was added to the declaration, which alleges:

"That in operating engines or trains along the said main line, common prudence and ordinary care requires that a careful lookout be maintained ahead of such engines or trains as the same approaches the place provided by the defendant for unloading cars, and that the said engine or train be there operated at a slow rate of speed, and under easy control, and without any unnecessary noise or the making of sounds calculated to frighten horses; and a failure to so operate such engines or trains is dangerous and calculated to cause the death or great bodily harm to those engaged about such unloading as is required by the defendant;" that "the defendant did negligently, carelessly, and in wanton disregard of the rights and safety of this plaintiff, run and cause to run the said train and engine along the said main line approaching the said point where this plaintiff was working, at a high and dangerous rate of speed, and without keeping a careful or constant lookout ahead of said train and engine, and without having and keeping the said train and engine under easy control, and while the said

train and engine were making unnecessary sounds and noises calculated to frighten horses,'' by reason of which the horses were frightened and the appellee was injured.

According to the evidence for the appellee, the train approached from the south, running at about twelve or fifteen miles an hour without the sounding of either bell or whistle. His attention was attracted to the approaching train just as the engine passed the depot by his horses becoming frightened thereat. He then left the car, walked on the tongue of the wagon to a mule on which there was a saddle on which he rode in driving the team, and got on the mule for the purpose of controlling the team, when the two front horses swerved around the car, throwing the saddle mule down and on the appellee. The train stopped after or about the time the mule fell, and when the engine was even with the appellee, at which time steam began to escape from the engine.

According to the evidence for the appellant, the train approached and passed the depot in the usual and ordinary way, and without any unusual or unnecessary noise. The signal for the station was given by sounding the whistle, and the bell was ringing as the train approached the crossing. The speed of the train was less than that stated by the appellee; the engineer saw the team and the fright thereof just after passing the depot, and then did all he could to stop the train, and succeeded in stopping it when the engine was something over halfway from the depot to the car the appellee was unloading. The engineer and the fireman then left the engine, and went to the appellee's assistance. The escape of steam when the engine stopped was from the automatic safety valve, over which the engineer had no control.

A witness who testified on the second, but not on the first trial, stated that he heard the train approaching before it reached the depot, warned the appellee thereof,

and advised him to move his team, but he declined to do so. This the appellee denied.

On the second trial the court granted the appellee an instruction based on the third count of the declaration, and another based on the fifth count thereof. Several instructions asked by the appellant were refused, among which are the following:

"(1) The court charges the jury to find for the defendant."

"(3) The court instructs the jury for the defendant that under the law in this case you should not consider any evidence as to the failure of the defendant to blow the whistle and ring the bell, or either, but, on the other hand, the court instructs the jury that, even though you may believe from the evidence that the whistle was not blown nor the bell rung, these facts cannot be considered as negligence on the part of the defendant."

"(5) The court instructs the jury to find for the defendant under the fifth count in the declaration.

"(6) The court instructs the jury for the defendant that, if you believe from the testimony that the engineer did all in his power to prevent the injury to the plaintiff after seeing him in a position of danger, then under your oaths you must return a verdict for the defendant."

On the former appeal this court held that the appellant was not entitled to a directed verdict for the reason that the evidence presented a case for the jury under the third count of the declaration (*G., M. & N. R. R. Co.* v. *Hardy,* 137 Miss. 608, 102 So. 66); and since the evidence on the second trial, in so far as the appellant's right to a directed verdict is affected thereby, was the same as that on the first, the opinion on the former appeal controls here, consequently the court below committed no error in declining to direct a verdict for the appellant.

The appellee was in no danger of being injured by the appellant's trains on its main track other than the way in which his injury in fact occurred; that is, by his

team becoming frightened at a passing train. The question then is, What duty, if any, did the appellant owe the appellee to prevent his team from becoming frightened at one of its passing trains?

When the appellant set apart the track, on which the car stood which the appellee was unloading, for use by consignees in unloading freight from its cars, it did not thereby divest itself of the right, nor relieve itself from its duty to the public, to continue the running of its trains, and thereafter it had the undoubted right, and was under the duty to the public to continue, to run its trains in the usual and ordinary way, of which the appellee must have been aware, and with the knowledge of which he must be charged. The only duty, therefore, which the appellant's servants in charge of its train on the occasion in question owed to appellee before discovering his peril, was not to run the train in such an unusual manner, or to cause it to make such unnecessary noise, as would be calculated to frighten animals near the track. This duty was not violated by them; for, when the train approached the car which the appellee was unloading, it was running in the usual and ordinary way, without unusual or unnecessary noise. Consequently, there was no issue under the fifth count of the declaration to be submitted to the jury. *Coleman* v. *Wrightsville, etc., R. R. Co.*, 114 Ga. 386, 40 S. E. 247; compare *N. O., J. & G. N. R. Co.* v. *Bailey,* 40 Miss. 395, wherein the person injured was in a car on a side track when it was switched from its position by the servants of the railroad company without his being advised of their intention so to do.

If the bell was ringing, as the engineer and fireman testified that it was, as the train approached the crossing, the appellee cannot complain thereat, for the statute so required. The escape of steam from the engine's automatic steam safety valve did not cause the fright of the team; for the team became frightened as soon as the

engine passed the depot, and the steam did not begin to escape until the train stopped. It also seems reasonably clear from the evidence that when the steam began to escape the mule had already fallen, and the appellee's injury had been inflicted. Be that as it may, an automatic steam safety valve is a necessary appliance for a steam engine, and the noise of steam escaping therefrom is unavoidable.

If the appellant's servants failed to ring the bell or sound the whistle as the train approached the crossing, as required by section 4045, Code of 1906, now chapter 320, Laws 1924 (Hemingway's 1927 Code, section 7964), such failure cannot aid the appellee, for that statute was enacted for the benefit of travelers on a highway or street. *Y. & M. V. R. R. Co.* v. *Cox*, 132 Miss. 564, 97 So. 7.

The only negligence of which the appellant's servants can here be held to have been guilty is that they did not exercise due care to prevent injury to the appellee after they discovered his peril, which on the evidence, under the decision on the former appeal herein, was a question for the jury.

It follows from the foregoing views that the court below erred in granting the appellee an instruction based on the fifth count of the declaration, and in refusing the appellant's third, fifth, and sixth instructions.

*Reversed and remanded.*

ETHERIDGE, J. (dissenting). I dissent from that part of the opinion reversing the case. I think the fifth count stated the cause of action, and that the proof was sufficient to submit to the jury the question as to whether due warning was given of the approach of the train, and whether, after seeing the dangerous situation of the appellee, the company could, by exercising reasonable diligence, have stopped the train in time to prevent the injury.

In 22 R. C. L., p. 921, section 167, it is said:

"It is the duty of a railroad company at a station where its tracks are in constant use by the public to keep a lookout, to run at a reasonable speed, and to give timely warning of the approach of engines or trains, but it is not required so to operate its trains at stations as to stop them in case of necessity before injury to persons crossing the track. It is required to exercise only ordinary care at such places."

In the same volume, page 951, section 191, it is said:

"A railroad company does not owe to a mere trespasser upon its track the duty when not aware of his presence of giving cautionary signals, to notify him of the approach of its trains, provided it exercises ordinary care after seeing him. And the failure to give signals elsewhere than at public places, or at public crossings, does not constitute negligence as to those who, as trespassers, may be crossing or using the track. When, however, those in charge of a moving train see a person walking on the track, a due regard for human life, and due precaution against unnecessary injury, require the usual signals of warning to be given. . . . It is clearly the duty of a railroad company at common law to give notice of the approach of trains at all points of known or reasonably apprehended danger. And failure to do so will render the company liable where such failure was the proximate cause of injury to one not guilty of contributory negligence."

See, also, *Fla. Cent., etc., R. Co.* v. *Foxworth*, 41 Fla. 1, 25 So. 338, 79 Am. St. Rep. 149; *Louisville, etc., R. Co.* v. *McNary*, 128 Ky. 408, 108 S. W. 898, 17 L. R. A. (N. S.) 224, 129 Am. St. Rep. 308; *Morrow* v. *So. R. Co.*, 147 N. C. 623, 61 S. E. 621, 16 L. R. A. (N. S.) 642.

In 23 Am. & Eng. Ency. L., p. 732, it is said in regard to injury to persons on a near track:

"The liability of a railroad company for injuries sustained by a person on or near its tracks, from some act

or omission alleged to constitute negligence, depends upon the legal duty of a railroad company in respect to the person injured. If there is no duty there is no negligence. Even if the company owes a duty to some one else, the failure to perform it does not create a liability to a person injured by such nonperformance if the duty was not one which the company owed to him. The measure of diligence, therefore, due by a railroad company to any person is a relative one, and what is or is not due diligence must be arrived at in every case with reference to the surrounding circumstances, and the relation which for the time being the company and the person occupied in respect to each other."

In the same volume, page 739, under head "Persons Loading or Unloading Cars," it is said:

"A person rightfully engaged in loading or unloading goods from a freight car is upon the railroad company's premises by its implied invitation, and the company owes to him the duty of exercising ordinary care. The fact that no agent of the company pointed out the car or knew that it was being loaded or unloaded at the time is immaterial if the car had been placed upon the side track for that purpose and the person injured was at that time rightfully engaged in the work."

In this case the plaintiff was unloading freight at a team track, placed there by the railroad for the use of persons, and for the convenience of the railroad company in unloading and removing freight from the cars. This car, and the plaintiff's position with reference to it, were in the line of vision, and certainly could have been seen had the persons in charge of the train been keeping proper lookout, and, had they exercised reasonable care after seeing the position of the plaintiff and the fright of his team, could have stopped the train prior to the injury.

At common law the duty of a carrier, under such circumstances, was the rule of reason; that is, what a per-

son of ordinary reason and prudence would do under the circumstances. Where a station and team track and other facilities for accommodation and for the business of the railroad company exist, the company's servants, in approaching such a place, ought to be attentive to the situation, and keep a proper lookout, and do whatever is reasonable under the circumstances.

The statute referred to in the opinion was not designed to abolish the common law, but was designed for the special protection of persons at a crossing. Since we have enacted numerous statutes regulating the operation of railroads, the common law is about to be forgotten in reference to the duties imposed by the rule of reason and prudence. See, also, the authorities collected in volume 3 of Mississippi Dig. Ann. on Railroads, p. 619, section 419.

If these views are correct, then the instructions refused to appellant, set out in the majority opinion, do not constitute error. Consequently, the judgment should be affirmed.

ANDERSON, J. (dissenting). On the former appeal of this case I was of opinion that it was a manifest wrong to appellant for the court to refuse its request for a directed verdict in its favor. So far as that question is concerned, the case on this appeal stands exactly as it did on that appeal. I am still of the opinion that the refusal of the court to direct a verdict for appellant was a manifest injustice to appellant. In passing on this question the majority opinion holds that, since the evidence bearing on this question on the second trial was the same as that on the first, the opinion of this court on the former appeal is the law of the case. If the opinion on the former appeal, passing on this question, was manifestly wrong and mischievous, as I think it was, the doctrine of the law of the case has no application. *Brewer* v. *Browning*, 115 Miss. 358, 76 So. 267, 519, L. R. A. 1918F, 1185, Ann. Cas. 1918B, 1013, where this ques-

tion was discussed and decided. The court held in that case that, under section 146 of the Constitution, providing that the supreme court shall have such jurisdiction as properly belongs to a court of appeals, there is no limit upon the appellate jurisdiction that may be conferred upon the supreme court; that the supreme court has the power to overrule or change its decision whenever, in its judgment, such decision is manifestly wrong; that such change of decision does not violate the rule of *res adjudicata*; and that a litigant has no vested interest in the court's mistake, where such mistake is discovered before the final ending of the litigation. I think that case is controlling here.

I agree to the other conclusions reached in the majority opinion.