New Orleans & N. E. R. Co. *v.* Hegwood.

(Division B. Oct. 14, 1929. Suggestion of Error Overruled November 25, 1929.

[124 So. 66. No. 28002.]

**Stevens & Heidelberg,** of Hattiesburg, for appellants.

**Morris & Wingo,** of Hattiesburg, and **Reily & Parker,** of Meridian, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The plaintiff, Mrs. H. L. Hegwood, filed a declaration for use and benefit of herself and three minor children, being the heirs at law of H. L. Hegwood, in which it was charged that on or about the 15th day of September, 1927, H. L. Hegwood, while crossing the railroad track of the appellant at Petal, Forrest county, Miss., and while traveling in an automobile, was struck and injured by a train of the defendant, in charge of and being operated by one James M. Smith, an engineer, who was likewise joined as a defendant. It was alleged that H.

L. Hegwood died on the 1st day of October, 1927. The negligence charged in the declaration against the defendants was in operating the train over the crossing in question at an excessive and dangerous rate of speed, and in failing to blow the whistle or ring the bell for the distance and in the manner required by law.

To this declaration the defendants filed a plea of the general issue, and notice thereunder setting forth the contributory negligence of H. L. Hegwood in going upon the crossing in question driving an automobile at a high and dangerous and reckless rate of speed without stopping, looking, listening, or otherwise ascertaining whether the way was clear, and that he ran the said automobile into the side of the engine.

The declaration was filed on March 20, 1928, and the case was first tried at the July, 1928, term of the circuit court, the jury disagreeing as to the liability of the appellant, and mistrial, therefore, being entered. The case was again tried at the November, 1928, term, and a directed verdict in favor of the defendant J. M. Smith, and the jury returned against the appellant verdict for two thousand five hundred dollars, and on this verdict judgment was rendered for said amount and court costs.

On the present trial it appeared that the deceased was a deputy sheriff of the county and was called early in the morning to assist another deputy sheriff in making an arrest, and was proceeding on his way to the assistance of such other deputy, driving at a high rate of speed, and ran into the locomotive; the locomotive being first to reach the crossing. Located just south of the road crossing and east of the railroad track is a small shed or depot. Leading off from the railroad track a short distance south of the depot is a side track, this side track being also on the east side of the railroad. The railroad track south of the place of injury is straight,

the right of way being approximately two hundred feet wide, one hundred feet on either side of the track.

It was in the testimony for the plaintiff that the whistle was not blown and the bell not rung until after passing the nine hundred foot sign board, or whistling board, of the defendant. There is a ginhouse located near the railroad track about five hundred twelve feet from the place of injury, and the testimony for the plaintiff tended to show that the whistle was not blown until this point was reached, and that the bell was not rung at all.

The testimony for the appellant was that the engineer blew the whistle at the whistling board and set the bell ringing, and the bell rang continuously until after the accident. The engineer also testified that he continued to blow the whistle at intervals of about three seconds while approaching the crossing. There was considerable testimony as to the situation of the buildings and other things near the railroad track, and the jury viewed the scene, or place, during the trial, and the objects were pointed out to the jury by witnesses at such time and place.

The court instructed the jury peremptorily in favor of the defendant Smith, and also instructed the jury that the railroad company was not guilty of negligence because of the cars on the side track, and also that the defendant was not negligent on account of the speed of the train, and further instructed the jury for the defendant that there was no prima-facie evidence of negligence against the defendant in this case, and limited the negligence to the question of whether or not the sign statute was complied with as to the blowing of the whistle and the ringing of the bell. The court further instructed the jury that it was not necessary to blow the whistle *and* ring the bell for a distance of three hundred yards from the crossing, but if either the bell was ringing continuously or the whistle blowing continuously for a distance

of nine hundred feet before reaching the crossing they would find for the defendant. The court further instructed the jury that the deceased, H. L. Hegwood, was guilty of gross, contributory negligence, and that the amount of recovery should be diminished by the amount that the contributory negligence of the deceased bore to the negligence of the defendant, if the defendant was guilty of negligence in failing to blow the whistle or to ring the bell in accordance with statute. It further instructed the jury that it was the duty of the deceased, before going on the crossing, to bring his car to a stop in accordance with the statute, and to look and listen for the approach of a train, and it was unlawful for the automobile to drive upon the highway at a greater speed than thirty miles an hour, and in thickly settled communities it was unlawful to operate at a greater rate of speed than fifteen miles per hour.

It is insisted that there should have been a peremptory instruction for the defendant, the railroad company, because the evidence showed that the accident was due solely to the deceased driving at a high rate of speed in approaching the crossing without stopping to look and listen, and without stopping the car. The Mississippi Stop Law, section 7965, Hemingway's Code 1927, requires every person operating or controlling any railroad to erect a sign at every railroad crossing not less than ten feet from the ground to the top of the sign on the right side of the road, forty inches by fifty inches, fifty feet from said crossing, on which shall be painted, in red letters to insure warning of the proximity of the crossing, the sign: "MISSISSIPPI LAW. STOP." Section 7966 requires the drivers of motor vehicles to stop before crossing a railroad track, not less than ten feet nor more than fifty feet from the nearest track, and look for a train. The statute makes exceptions in favor of certain vehicles not pertinent to this case. It is fur-

ther provided: "And in the trial of all actions to re-
cover personal injury or property damages, sustained by
any driver of such motor driven vehicles for collision of
said vehicle and train in which action it may appear that
the said driver may have violated any of the provisions
of this act, the question of whether or not the said vio-
lation was the sole or approximate cause of the accident
and injury shall be for the jury to determine regardless
of the penalizing feature of this act. The violation of
this act shall not affect recovery and the question of neg-
ligence or the violation of this act shall be left to the
jury; and the comparative negligence statutes and pri-
ma-facie statute of our state shall apply in these cases
as in other cases of negligence." Section 7966. By an-
other section of the act, section 7967, it was made a mis-
demeanor for any person to violate the provisions of the
act, and this section provided for fine and imprisonment,
or both.

In the case of Gulf & S. I. R. R. Co. v. Saucier, 139
Miss. 497, 104 So. 180, this statute was construed, and it
was held that requiring drivers of motor vehicles to stop
within not less than ten feet nor more than fifty feet,
therefrom, does not prohibit a person violating such laws
from recovering damages for an injury proximately
caused by the negligence of the railroad company in fail-
ing to keep its track in a reasonably safe condition; that
by the terms of the statute above quoted from it is pro-
vided that a violation of the act shall not affect recovery,
and questions arising under the comparative negligence
statute shall apply regardless of the penalties of the act.
By the very terms of the statute and by the philosophy
of this decision, the plaintiff was not prohibited from re-
covering for the injury to the deceased, if the railroad
company was negligent. The proof was sufficient for the
jury to find that the railroad did not comply with the
statute requiring the blowing of the whistle or the ring-

ing of the bell for nine hundred feet before reaching the crossing, and keep one or the other continuously whistling or ringing until the crossing was passed by the locomotive. We think it was a case for the jury's decision, and that consequently a peremptory instruction should not have been given for the railroad company.

The appellant complains of the refusal of an instruction by the court in the following language: ''The court instructs the jury that if the bell was rung continuously for a distance of three hundred yards before reaching the crossing then the state did not require the whistle to be blown at all. The statute requires the whistle to be blown only in the event the bell is not rung for this distance; and in this connection the court tells you that the law does not mean one continuous blast of the whistle.''

We think the instruction given for the appellant upon this proposition was an adequate announcement of the law upon the subject.

The court instructed for the defendant, among other things, as follows: ''The court instructs the jury that the law of this State does not require the defendants to ring the bell and blow the whistle for a distance of three hundred yards before approaching a road crossing but that the law has been fully complied with when either the whistle is blown or the bell is rung for this distance. The law does not require both.'' And also the following: ''The court instructs the jury for the defendant that if you believe from the evidence in this case that the bell was rung or the whistle blown at a distance of three hundred yards from the crossing in question, and the bell continued to ring or the whistle continued to blow until the crossing was reached, then it is your sworn duty to find for the defendants, regardless of every other fact and circumstances in the case.''

These instructions follow the language of the statute, and we think that the instructions sufficiently announce

the law for the guidance of the jury. We find no error in giving instructions for the plaintiff, or in refusing instructions for the defendant. It is familiar law that all that is required is for the court to give the jury adequate instructions covering the case, and it does not require the court to repeat instructions that have already been given in other instructions.

It is next assigned as error that the court erred in refusing to permit the railroad company to show that it paid the hospital bills and medical bills incurred by the deceased, or on his behalf, from the time of the injury until his death. During the development of the plaintiff's case the following questions were asked the witnesses:

"Q. With reference to the hospital expenses, you were never called upon to pay any expense in connection with the treatment of your husband? (Objection to that; overruled; exception.) A. No, sir.

"Q. You were not called upon to pay the doctor bills? A. No, sir. (Objection; overruled; exception.)

"Q. And you did not pay it? A. No, sir.

"Q. You were not called upon to pay any nurse expense? (Objection; overruled; exception.) A. No, sir.

"Q. And did not pay any? A. No, sir."

When the defendant was introducing its testimony, the following questions were asked:

"Q. You say he was taken to the infirmary? A. Yes.

"Q. And he stayed there until he died, and Dr. Crawford treated him? A. Yes.

"Q. The nurse was there who waited on him? A. Yes.

"Q. The railroad paid for all that expense? A. Yes.

"We object to all that. Sustained. Exception."

The declaration did not specifically claim the expenses of hospital and medical bills as part of their damages. The plaintiff's instructions upon the elements of damages read as follows:

"The court charges the jury, that if you find for the plaintiff, that in calculating the amount of your verdict you may take into consideration:

"The physical pain and suffering and mental anguish endured by the deceased, if any, between the time of his injury and death, as shown by the testimony;

"The present net worth of the pecuniary loss sustained by the widow and children of the deceased by reason of the death of H. L. Hegwood, if any, as shown by the testimony;

"The value of the loss of the companionship, protection, and society of the deceased toward his widow and children, if any, as shown by the testimony."

This instruction did not include a demand for hospital and medical bills incurred and paid by the plaintiff, nor was there any evidence to show that the plaintiffs were charged with any such expenses.

This court has held that to entitle the plaintiff to recover specific items of damage as to doctor bills and hospital bills, these items must be declared in the declaration and sustained by the proof. Chapman v. Powers, 150 Miss. 687, 116 So. 609. Furthermore, the pleadings for the defendant did not set up any payment, or partial payment, for the injuries to the deceased. In other words, there was no specific issue made up as to medical bills and hospital bills incurred by, or on behalf of, the deceased.

In view of the fact that the deceased was badly injured, having several broken ribs, broken jaw, and many other injuries, and lived for a period of fifteen days, and that he was forty-three years of age at the time of his death, enjoyed good health, and that his beneficiaries were all younger than he, and in view of the fact that only two thousand five hundred dollars was allowed for all these things, we do not think the defendant was injured in any respect by the exclusion of the testimony

complained of here. It rather appears affirmatively that they had not incurred any such expenses, and we could not assume that the jury considered expenses of hospital and medical attention.

We find no reversible error in the case, and the judgment will be affirmed.

Affirmed.