# Thompson *v*. Mississippi Cent. R. Co.

(In Banc.   March 9, 1936.   Suggestion of Error Overruled, April 20, 1936.)

[166 So. 353.   No. 32056.]

**Engle & Laub** and **W. A. Geisenberger,** all of Natchez. for appellant.

Brady, **Dean** & **Brady**, of Brookhaven, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant's decedent was killed at a grade crossing on appellee's railroad line, and suit was instituted against the railroad company, predicated principally upon the charge that the railroad employees had failed to comply with the familiar statute, section 6125, Code 1930, which requires the blowing of a whistle or the ringing of a bell when approaching public crossings. The preponderance of the evidence supports the railroad that the statutory signals were in fact sounded, and there was a verdict for

the defendant railroad company. But in examining the instructions next to be mentioned, and of which complaint is made, we must view them as though the proof were undisputed that the crossing signals were not sounded. Appellant's decedent was the driver of the automobile which was struck at the crossing.

There were six instructions upon the subject to be discussed, but reading them together, each as supplementing and explaining the other, the proposition of law carried thereby to the jury is embraced in instructions Nos. 6 and 16, as follows:

"The Court instructs the jury for the defendant that although they may believe from the evidence that the bell of defendant's locomotive was not ringing for a distance of 300 yards before it came to and when passing over the Liberty road crossing, and although they may believe that the whistle was not blown for a distance of 300 yards before defendant's train came to and when passing over the crossing, still the plaintiff cannot recover, if they further believe that the deceased wife of the plaintiff saw the train before reaching the crossing in time to have stopped the automobile but proceeded after seeing it in an effort to cross, to pass over the crossing."

"The Court instructs the jury for the defendant that the purpose of the ringing of the bell and the blowing of the whistle continuously for a distance of 300 yards before reaching and upon passing over any public highway crossing is to give notice to persons who are going to pass over a public highway crossing, but the failure either to so ring the bell or blow the whistle will not entitle the plaintiff in this case to recover if his deceased wife saw the train, and by the use of ordinary care could have stopped before undertaking to pass over the crossing in front of defendant's locomotive."

The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any

efficient intervening cause, produces the injury, and without which the result would not have occurred; or, as otherwise stated, there must be an efficient causal connection between the negligence complained of and the injury, and that connection must be a natural and continuous sequence unbroken by any other cause. If the sequence be broken, then there is no causal connection, hence no legal connection, between the alleged negligence and the injury.

In Billingsley v. Illinois Central R. Co., 100 Miss. 612, 624, 56 So. 790, 791, it was said by our court in regard to the crossing signals by railroads: "The purpose and object of requiring these crossing signals to be given is to warn persons who are about to cross the track, or those whose teams are so near the crossing as, reasonably and naturally, may be expected to become frightened by the train, and thus give the parties an opportunity to get the team away from the track." As said by the Supreme Court of Appeals in Etheridge v. Norfold, etc., Co., 143 Va. 789, 799, 129 S. E. 680, 682, the purpose of such a statute is "not to impose an unconditional penalty on railroads, but to protect the public." There is perhaps no principle more universally recognized in the law than this: That when either the common law, or a statute or a contract, requires the giving of notice or warning, it is immaterial that the notice or warning was not given, and no actionable wrong is predicable upon the failure to give such notice or warning, when the party has otherwise, within sufficient time, obtained the knowledge which the notice or warning would have furnished, leaving aside those cases where the notice must be served in writing.

It was therefore simply the requisite application of the principle last stated when the court further said in the Billingsley case, supra: "While the defendant was negligent in failing to give the signals for the crossing as required by law, the plaintiff cannot complain, because she saw the train long before it reached the crossing, and

there was no causal connection between the failure to give the signal and the plaintiff's injury,'' and so it was said and reaffirmed in Yazoo, etc., R. Co. v. Cox, 132 Miss. 564, 570, 97 So. 7, 8: ''The failure to sound these alarms for the crossing was not the proximate cause of the injury to the plaintiff, for the reason that he saw the approaching train before it reached the crossing, and therefore there could be no causal connection between the failure to sound these alarms and the injury to plaintiff.'' And these holdings are within the primary principles first above stated, for when appellant's decedent, the driver of the automobile, saw the train, and this in time to have avoided going upon the track, the connection between the failure to give the signals and the injury was broken, cut off, fenced out, insulated, and thereupon the sole proximate cause became the negligence of the automobile driver in the attempt to beat the train across the crossing.

But it is argued that this effort of the deceased driver was contributory negligence merely—a misjudgment on her part as to whether she could beat the train across. The enactment of the statute abolishing contributory negligence in personal injury cases and establishing the doctrine of comparative negligence—more properly to be called concurrent negligence—was a just and timely advancement in our laws, but unfortunately it has led to some confusion in judicial decisions and much more in the arguments advanced in negligence cases. But this confusion would disappear if there were always firmly held in mind the distinction between the right, on the one hand, to maintain the action, and the amount of the damages on the other. In order to establish the right to maintain the action, the burden is on the plaintiff to show that there was a negligent act or omission by the defendant, and that this negligence was a proximate cause of the injury, or a cause which proximately contributed to it; whereas in regard to contributory negligence, the

burden of proof is on the defendant, and does not come into play at all unless the plaintiff has on his part sustained the burden as to the proximate cause. And since, as held in our previous decisions, to which we adhere, there was under the verdict of the jury in this case no causal connection between the failure to give the signals and the subsequent injury, and therefore no proximate cause shown as against the defendant either solely or by way of contribution, all arguments in respect to contributory negligence on the part of the plaintiff disappear as having any legal pertinency, they have no available place in the case.

· It has been urged that had the statutory signals been given, the driver of the automobile might have become earlier aware of the approach of the train, and might have taken some safer course than that actually pursued. Let us examine that contention in the light of the facts shown in evidence. Appellant's principal witness testified that the driver stopped the automobile immediately within the stop sign, and about forty-five feet from the railroad track and there looked in each direction for trains. At what safer point could she have stopped? This witness testified that the driver, while proceeding thence at a rate from five to ten miles an hour, looked again when about twenty feet from the track. This was still a safe point, for the testimony is undisputed that the brakes of the automobile were in perfect condition, and at the stated rate of speed the car could have been stopped within five or six feet. The day was clear, the sun was shining, the evidence is that the train was clearly visible either at the point forty-five feet from the track or at twenty feet therefrom. It was at one or the other of these points, according to the verdict of the jury, that the driver saw the train, and at either of them she had ample time to avoid going upon the track—she was in a safe place at either of these points. We may therefore inquire what safer course is in mind in the argument that

had the driver been earlier warned she might have taken some safer course? Is it that she might have earlier speeded up so as to outrun the train to the crossing? Are courts to so mold their opinions, and so construct their decisions as to invite travelers into attempts to do that?

Fortunately, so far as our present task of decision is concerned, the argument that had the signals been given, the injured person might have become earlier aware of the train than the time he or she actually saw it, and might have done this or that, has already been answered and disposed of in the Billingsley case, supra. The injured person stressed that very point in that case, and to it the court answered: "It is urged with great ability and ingenuity that, if these signals had been given, the mother would have gone in search of her child earlier—in ample time to have rescued the child, and have removed herself from danger. In the argument of this proposition, the able and astute counsel for appellant place themselves upon the springboard of imagination, and leap into the realm of conjecture. Their argument upon this proposition is conjecture, pure and simple; and in such an instance 'experience becomes an infant and speculation a contingency.' Judgments of courts and verdicts of juries should not rest upon so airy a foundation." And this is the same response which other courts have given to the same argument, as for instance, in Hickey v. Railroad (C. C. A.), 8 Fed. (2d) 128, 130.

We have carefully examined the other assignments of error and are in no disagreement that, upon the record here presented, there is no reversible error in them.

Affirmed.

## DISSENTING OPINION.

**Ethridge, J.**, delivered a dissenting opinion.

I cannot concur with the views expressed in the majority opinion. While there is ample evidence to sup-

port the verdict of the jury, there is also evidence from which the jury was authorized to find for the plaintiff, and in my opinion, the instructions in the case, instead of giving a consistent and proper announcement of the law, are incorrect and some of them are fatally erroneous.

In the majority opinion it is said that there were six instructions upon the subject to be discussed, but reading them together, each as supplementing and explaining the other, the proposition of law carried thereby to the jury is embraced in instructions Nos. 6 and 16 set out in the majority opinion.

I think a reading of all the instructions together, instead of curing the errors, emphasizes and accentuates them.

The court instructed the jury peremptorily that the railroad was not negligent in the speed with which it was operating the train, or in failing to keep its equipment in proper condition. In instruction No. 5 for the defendant, the jury were told that the defendant was guilty of no negligence on account of the construction and maintenance of its track near the Liberty road crossing, nor in running its train at the rate of speed at which it was running when it approached said crossing, nor was it guilty of negligence on account of the condition in which it operated its locomotive and train at the time of the alleged injury, and that the plaintiff is not entitled to recover on account thereof. This, of course, would be correct if the signals had been given for the safety of persons traveling that way. The servants of the defendant evidently did not see the plaintiff's intestate, but if the railroad's servants had kept a lookout and realized the dangerous position, they were then under the duty, of course, to have slowed down the speed to have prevented the injury. Authorities will be cited later in this opinion.

Instruction No. 6 set out in the majority opinion is erroneous because it does not embrace the hypothesis that

the negligence of the deceased was the sole and proximate cause of the injury. A careful reading of this instruction shows that although the defendant was guilty of negligence in not ringing the bell or blowing the whistle, still it was not liable because the deceased was negligent, as stated in the instruction, in proceeding to cross after seeing the train. It nowhere embraces the idea that the deceased saw the train three hundred yards away, and nowhere carries the idea that seeing the train she must have been near enough to indicate to any reasonable person that it would have been foolhardy to undertake to cross, and it completely ignores the comparative negligence statute. It boldly announces that if the deceased wife of the plaintiff saw the train before reaching the crossing, and could have stopped, then such failure to stop exonerates the railroad company of its negligence in failing to sound the whistle or ring the bell.

Instruction No. 7 for the defendant instructs the jury that if they believed, from credible evidence, that the plaintiff's deceased wife stopped the automobile within the stop sign approximately forty-five feet from the crossing, and that she looked for the train and saw it, but nevertheless undertook to cross, then the failure to ring the bell or blow the whistle was not the proximate cause of the injury. This ignores the possibility of the train being seen far enough away for the deceased to have believed she could safely cross before it would reach the crossing, and the hypothesis that she might have misjudged the speed of the train.

The court also instructed the jury for the defendant that the engineer was under no obligation to keep a lookout beyond the right of way, and while this is abstractly correct, yet in connection with the other instructions mentioned, and those complained of which exonerate the defendant from its negligence in not ringing the bell or blowing the whistle, it is manifest that it was confusing to the jury.

The court then instructed the jury that the engineer in control of a locomotive is entitled to assume that an apparently competent person driving an automobile towards a crossing and in the clear of the track will stop before he reaches the track, and the engineer is under no duty to stop or slacken the speed of the locomotive until it becomes reasonably apparent to him that such person is about to drive on or near the track. This instruction could only be proper when the proper signals had been given.

The court also instructed the jury for the defendant that there could be no recovery against the defendant on account of any alleged failure on its part to equip its locomotive with such a bell and whistle is the law requires. This simply adds to the confusion.

Instruction No. 14 for the defendant told the jury that if they believed it was difficult to see the train on account of the existing conditions, then it became the duty of the driver to exercise greater care and caution than if it had not been difficult to observe the approaching train. This instruction was also applicable to the railroad in this sense, that if its servants could not see the track, they should have slowed down the speed of the train.

Instruction No. 15 told the jury that "If you believe from the evidence in this case that Mrs. Lucille Rife Thompson knew that the train of the defendant was approaching the crossing at a time when the car she was driving was sufficiently distant from the track for her to have brought the same to a stop before going upon the track ahead of the approaching train, then you must find for the defendant, and your verdict should be, 'We, the jury, find for the defendant.' " This completely ignores the negligence of the railroad company in its failure to blow the whistle and ring the bell.

Instruction No. 16 set out in the majority opinion completely ignores the comparative negligence statute. The mere fact that a party may have seen the train and failed

to stop does not exonerate the defendant of its duty to do what the law requires—ring the bell and blow the. whistle. This statute was enacted for the purpose of the public safety, and to remove any questions as to whether the engineer should have given an alarm, and the comparative negligence statute comes into play, although the injured party may have also been guilty of negligence, either simple or gross. In the absence of a statute requiring the giving of signals, railroad companies would be under duty to sound an alarm whenever, from the facts shown, it was the reasonable and prudent thing to do. This was the rule at the common law. Illinois Cent. R. R. Co. v. Mann, 141 Miss. 778, 106 So. 7.

Again, although a railroad train may be operated at a reasonable rate of speed outside of municipalities, it must be governed by the circumstances surrounding it, which brings into play the reasonable requirement of slackening its speed to prevent injury to persons. Under the statute prohibiting the speed at a greater rate than six miles per hour in municipalities, the court has held that although the train was being operated at a less rate than six miles per hour, yet the circumstances show that the railroad might have been guilty of negligence as to its speed, although within the six-mile limit. Alabama & V. R. R. Co. v. Phillips, 70 Miss. 14, 11 So. 602, and So. Ry. Co. v. Murray, 91 Miss. 546, 44 So. 785, in which it was held that the railroad company was negligent for failure to ring the bell as required by law in a suit for killing cattle, although the person driving the cattle saw the train further than three hundred yards away.

The decision in the case at bar is in conflict with this rule, or at least, if not, it makes the killing of cattle of more concern than the killing of human beings.

In the case of Skipwith v. M. & O. R. R. Co., 95 Miss. 50, 48 So. 964, it was held that, where a railroad company failed. to give the statutory signals, and the train was run around a curve so near a team of horses as to frighten

them, resulting in an injury to them and the wagon, the company was liable for damages. See, also, Louisville, etc., R. Co. v. Crominarity, 86 Miss. 464, 38 So. 633, 634, where the court, speaking through Judge Truly, said that "What constitutes negligence must depend always upon the surrounding conditions and the attendant circumstances of the particular instance. No hard and fast rule of action can be prescribed, which will make the same course of conduct under any and all circumstances either wise or unwise, cautious or reckless. . . . Due caution in one instance might well be deemed foolhardiness under different circumstances. The true rule is that it is incumbent upon the traveler to use that degree of care and caution which is rendered necessary by a reasonable regard for his safety under the peculiar circumstances and conditions by which he is at the time confronted. It is the duty of a traveler in approaching a crossing to use all reasonable precaution to apprise himself of the approach of a train, but whether that reasonable precaution will demand that he shall 'stop and look and listen,' or whether any lesser degree of care on his part will be sufficient, must generally, though not invariably, be a question of fact; and, being a question of fact, it should be submitted to the jury, under proper instructions, for their decision."

In Columbus & G. Ry. Co. v. Lee, 149 Miss. 543, 115 So. 782, it was held that, even though the stalling of a car on the track in front of an approaching train may have been one proximate cause of the death of a guest in the automobile, the railroad company was liable if its negligence concurred, since it is not necessary for the plaintiff's negligence to be the sole, proximate cause of the injury.

In Gulf & S. I. R. R. Co. v. Simmons et al., 150 Miss. 506, 117 So. 345, it was held that although the giving of signals, as required by statute, would not have prevented the automobile from becoming blocked on the crossing, this did not relieve the railroad company of the necessity

of giving the signals as a warning of the approach of its train, since travelers on a highway have a right to insist that signals be given, not only that they may keep off the track, but that they may extricate themselves and their property from positions of danger before the arrival of a train.

In the case before us, if the signal had been given, it would have notified the driver of the automobile that the train was nine hundred feet or three hundred yards away, and the driver could then have acted on that theory. The right of the driver of the automobile was infringed if the signals were not given, and the jury should have been carefully instructed so that all rights would be called to their attention; and the proper hypotheses stated so that the jury could have rightfully determined the rights of the respective parties.

In N. O. & N. E. R. R. Co. v. Hegwood, 155 Miss. 104, 124 So. 66, it was held that where a railroad company is negligent in not ringing the bell and blowing the whistle for three hundred yards before reaching a highway crossing, and such action results in an injury, it is no defense to say that the injured party failed to stop, as required by the Mississippi Stop Sign, section 7865, Hem. Code, 1927. Gulf & S. I. R. R. Co. v. Saucier, 139 Miss. 497, 104 So. 180.

Section 511, Code 1930, provides that in all actions brought for personal injuries, the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured. This statute is applicable to this suit, because, under the facts shown therein, the jury had a right to believe that both parties were negligent, and there was a causal connection between the negligence of the railroad company and the death of the driver of the automobile. Section 512, Code 1930, provides that "All questions of negligence and contributory negligence shall be for the jury to determine." It

was the intention of the Legislature in the enactment of this statute to leave to the jury the determination of the question of negligence, where there was proof in the case that would warrant the jury in finding either simple or gross negligence.

I think the purpose of these statutes is wholesome, and that same should be safe-guarded by the courts.

I am of the opinion, therefore, that the judgment should be reversed, and the cause remanded, to be tried under proper instructions.