GULF & SHIP ISLAND R. R. Co. *v.* SIMMONS *et al.**

(Division B. Feb. 18, 1929.)

[121 So. 144. No. 27669.]

328

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2572, p. 674, n. 53; section 2834, p. 852, n. 57; section 3088, p. 1107, n. 60; Courts, 15CJ, section 376, p. 970, n. 29; Death, 17CJ, section 235, p. 1350, n. 7; Evidence, 23CJ, section 1972, p. 151, n. 63; Railroads, 33Cyc, p. 959, n. 46; p. 1045, n. 35: Trial, 38Cyc, p. 1690, n. 41. On liability of railroad company for negligence in failing to signal approach of trains at highway crossings, see annotation in 9 L. R. A. (N. S.) 338; L. R. A. 1915E, 533; L. R. A. 1915E, 534; 22 R. C. L. 999. On excessiveness of verdicts in actions for personal injuries resulting death, see annotation in L. R. A. 1916C, 810.

*T. J. Wills* and *Chas. N. Burch,* for appellant.

*Henry Mounger, Jr., Davis & Conner* and *Hall & Hall,* for appellees.

GRIFFITH, J.  This case was before the court at the March, 1928, term as the result of a former trial, and the opinion delivered in reversing that judgment is found in 150 Miss. 506, 117 So. 345.  The general situation is well and clearly set forth in that opinion.  It is evident, however, upon a complete examination of the record now before us, which is to say, the record of the second trial, that much of the details of the facts then before the court are not shown by the evidence in the present record. None of the train crew testified in the present case, and several features of the evidence respecting measurements, distances, grades, the line of vision, and the obstructions or want of obstructions as to vision, and  many other particulars of the actual physical situation, were not so fully placed before the jury which heard this, the second trial, as compared with the full developments of all these facts in the first trial—this is apparent when this present record is compared with the statement of the facts in the former opinion.

But it appears clearly enough in this present record that the appellees' decedent approached the railroad crossing, going south down grade on the public highway, driving an automobile with defective brakes, and, when about fifty feet from the railroad track, he bumped into

the rear of another automobile going in the same direction, which latter automobile had at the time come nearly to a stop, because of the approach of a third car going north. The impact of the decedent's car with the car ahead of him was sufficient to accelerate the speed of the car thus bumped into and to cause the latter to run on down the grade to the railroad track, and beyond that point a few feet to the beginning of the up grade on the south side of the said track, at which latter point the car ahead came to a stop. During this time, the decedent's car had been following immediately behind, until the car ahead stopped as aforesaid, which then left the decedent's car blocked on the railroad crossing, the passageway being very narrow at that point. Almost immediately after the two automobiles thus came to a stop, with the decedent's car on the track as aforesaid, a passenger train of appellant came around an adjacent curve in the railroad track, running down grade, and consequently without much noise, at a speed of approximately thirty miles an hour, and appellees' decedent was killed.

All the witnesses testify to the fact, and it is undisputed even by inference that the statutory signals were not given by appellant as its train approached this public crossing, and all agree, or substantially agree, in their testimony that the locomotive whistle was not sounded nor the bell rung before the time when the train had arrived at about two rail lengths or about sixty or seventy feet from the said crossing; so that the statutory warning was not given until it was too late to be of any effective avail, and so that at that late moment it had as well not been given at all.

The statutory duty of appellant was "to cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway, and the bell shall be kept ringing or the whistle shall be kept blowing continuously until said crossing is passed." The law as

stated in the former opinion, and in all the opinions of our court dealing with the aforesaid statute, is that travelers on a highway have a right to insist that these signals be given, not only that they may be warned thereby to keep off the track, but that they may extricate themselves and their property from a position of danger before the arrival of the train.; and further that, if it would be a reasonable conclusion upon all the facts in the case that, had the signals been given, the traveler by virtue of the warning might have avoided the danger of injury, then the failure to give the statutory signals may be considered as the proximate cause of the injury or death that results.

Applying these rules of law to the case shown by this record, it would appear that only one result can reasonably follow. Automobiles are of such common use that courts and juries may take knowledge of the fact, so obvious to ordinary observation, that such a vehicle can be quickly turned to the right or to the left, and this, too, without regard to the brakes. If the statutory signals had been given continuously by this train for three hundred yards, the inference is reasonable that appellees' decedent would have heard them, and would thereby have been made aware of the near and dangerous approach of the train, and that, acting upon the dominant instinct of self-preservation, he would instantly have turned his car into the ditch or the embankment either to the right or to the left, and thus would have escaped. There is nothing whatever in this record that militates against that conclusion as a fair and reasonable one on all the facts. And there is double assurance here in this that, if the signals had been given the driver of the car ahead, the one which was bumped into would also have heard them, and would have taken immediate action to turn his car before reaching the crossing, and thus would have blocked off the car of appellees' decedent.

We are aware that the court in the former opinion said: "It is undoubtedly true that the giving of the statutory signals would not have prevented Simmons' car from going onto the track and becoming blocked thereon," and we have not failed to note that the appellant apparently bottomed its chief defense in the second trial, and in its present argument here, upon the quoted expression. Whatever there was in the evidence on the former trial that induced the court to use that language is wanting in the evidence that was placed before the jury in this second trial; and as to the facts we are, on this appeal, confined to the present record of the evidence. The doctrine of the law of the case does not apply to mere recitals of fact in an opinion on a former appeal, 4 C. J. 1107; *Mattingly* v. *Pennie,* 105 Cal. 514, 39 Pac. 200, 45 Am. St. Rep. 88, for the very sufficient reason that this court is not constitutionally authorized to make an original finding of fact. It is a fundamental principle under our jurisprudence that the function of original fact finding is one that is to be exercised only by juries, unless waived, and by chancellors. That the above-quoted expression cannot be relied on as the law of the case may be illustrated thus: Suppose the appellant had requested, and the judge on this second trial had given, the jury an instruction in the words quoted, would it not have been plain error as a charge upon the weight of the evidence— even more, would it not have been a direction by the judge to the jury to find a certain way on the facts when it was the separate and inviolable privilege and duty of the jury to make their own findings on these facts? Moreover, the opinion of a court is entitled to that same comprehensive treatment that belongs to other compositions or to instructions to juries and the like—all parts must be taken and read together. It is not permissible to detach one expression from others on the same point. Looking, therefore, further along in the former opinion of the court, we find that it also said: "In the case at bar,

there was no train in sight or known to be approaching when Simmons went upon the track on a public highway, and if the customary signal had been given, he might have avoided the dangerous situation in which he was entrapped." The jury in this second trial evidently came to that very conclusion, and, as we have already in effect said, we think the jury was right in so concluding. But, even if we thought them wrong, there being sufficient evidence to justify their conclusion, we would have no rightful authority to reverse.

There is no instruction in the record informing the jury of the rules of law as to the measure of damages. It is also true that no such instruction was asked. Appellant complains, nevertheless, that the absence of such an instruction is error. It is so thoroughly understood and so well settled that, under our procedure, the circuit judge can give no instruction not requested, that we refrain from citing the statute and the numerous decisions on the point; and it is equally well settled that in civil cases the trial judge cannot be put in error with respect to an asserted omission when he had no power to act, and when in fact he is prohibited from acting. The correct rule in such a case is stated in 2 Thompson on Trials (2 Ed.), section 2338: "It is a rule in the law of procedure, recognized and enforced in all jurisdictions, that, in civil cases, the judge is not bound to give his opinion to the jury upon any matter of law arising upon the evidence, unless requested to do so by one of the parties. Where no such request is preferred, the presumption is that the jurors are acquainted with the rules of the law applicable to the case, and the failure to instruct them cannot be assigned for error."

The appellant complains that the verdict is excessive. The court instructed the jury that the actions of appellees' decedent in driving down to the crossing in the manner that he did was gross negligence, and further instructed the jury that, if they should find for the

plaintiff, they must not allow full damages, but only such as would be justified by comparison with the negligence of appellant. The jury allowed twenty thousand dollars. It was shown by the evidence that the decedent was a young man thirty-four years of age, in good health, a college graduate, earning steadily in his profession as a teacher two thousand seven hundred dollars per year, was of good habits, industrious, and devoted to his family. Applying ordinary knowledge and common observation, his life expectancy and earnings during that expectancy would be more than forty thousand dollars, leaving aside any other element of damage. If his negligence was gross, so was that of the appellant. The verdict is therefore not excessive.

*Affirmed.*