LOUISVILLE & N. R. Co. *v.* WHISENANT, et al.

May 26, 1952.

No. 38344 (58 So. (2d) 908)

422

Thos. G. Greaves, Jr., and Smith, Hand, Arendall & Bedsole, for appellant.

424

426

**Bidwell Adam** and **Barnett, Jones & Montgomery,** for appellees.

**Holmes, J.**

The appellant appeals from an adverse jury verdict and judgment of the Circuit Court of Jackson County, awarding to the appellees damages in the sum of $20,000 for the alleged wrongful injury and death of Wilbourn Houston Whisenant, a boy of the age of twelve years. Appellees are the father, mother, brother and sister of the decedent.

The tragedy resulting in the decedent's injury and subsequent death occurred between 10 and 10:30 o'clock on the morning of August 24, 1950 at the Bayou Cosotte crossing in Jackson County, where the appellant's line of railroad crosses what is known as the Bayou Cosotte road. The decedent at the time was riding in an old Model A Ford sedan in company with Anthony Edward Ugas, a minor of the age of 18 years, and Robert Henry Linder, a minor of the age of 14 years. The record does not disclose the driver of the car but the declaration alleges and the answer does not specifically deny that the decedent was riding in the back seat of the car. As the car was proceeding over the crossing, traveling in a northerly direction, it was struck by one of appellant's eastbound trains, consisting of an engine, tender and coach, and was practically demolished. Two of the occupants of the car were found dead near the track and appellees' decedent was found gravely injured but still living and he was rushed to the hospital where he died approximately seven hours later.

The declaration alleged a number of grounds of negligence on the part of appellant but the proof was mainly

directed to the contention of appellees that appellant was guilty of negligence which proximately caused or contributed to the injury and death of the decedent in that it caused its train in approaching the crossing to be operated at a rapid rate of speed without giving the statutory signals by causing the whistle to be continuously blown or the bell to be continuously rung for a distance of at least 300 yards from the crossing as provided by Section 7777 of the Mississippi Code of 1942. The appellant urges on this appeal that the evidence is insufficient to support this contention, and that the trial court erred in refusing its requested peremptory instruction, and in overruling its motion for a new trial upon the ground that the verdict is contrary to the overwhelming weight of the evidence. We find no error in the court's action in either instance. The testimony for the appellees showed that the road in question has a sharp curve in it before reaching the railroad track, and that the view of one driving a car along said road at said point is obstructed by trees and growth so as to prevent one from clearly seeing the railroad track or a train thereon. A substantial number of witnesses for the appellees testified that they did not hear the whistle blow or the bell ring, and yet they showed by their testimony that they were close enough to have heard the whistle or the bell if either had been sounded. At least two witnesses for the appellees testified that they were looking at the train as it approached the crossing and that the train was running at from 60 to 70 miles per hour, and that they heard neither whistle nor bell except for two short blasts of the whistle immediately prior to the collision. On the other hand, the train crew testified for the appellant that the statutory signals were given. The engineer denied that he sounded two short blasts of the whistle just before the collision, and denied that he was running at a rate of speed in excess of 45 miles per hour, and testified that as he approached the crossing he was sounding both the whistle and the bell. He further

testified that he saw the car when it was about 300 feet from the crossing, traveling at 30 to 35 miles per hour, and that at that time the train was about 500 feet from the crossing and that he saw the face of the driver of the car and that the driver of the car looked at the train and reduced his speed to about 15 miles per hour and then shortly increased his speed and started across the crossing.

We think the evidence presented questions of fact for the determination of the jury as to whether the statutory warning signals were given and as to whether the failure to give such signals directly and proximately caused or contributed to the injury and death of the decedent, and as to whether the driver of the car saw the train and attempted to beat the train across the crossing. These factual issues were submitted to the jury by proper instructions and we think rightly so. ██ ██ It is argued by the appellant, however, that the engineer's testimony that the driver of the car saw the train and reduced his speed and then shortly increased his speed and drove on the crossing is uncontradicted and should be accepted as establishing as true that the driver of the car saw the train and attempted to beat it across the crossing, and that this act of the driver was the sole proximate cause of the injury as was held in Thompson v. Mississippi Central Railroad Company, 175 Miss. 547, 166 So. 353. The engineers' testimony, however, showed that he was about 500 feet from the crossing and traveling east at a rate of speed of from 40 to 45 miles per hour and that the driver of the car was about 300 feet from the crossing traveling north at a rate of speed of from 30 to 35 miles per hour, and we are of the opinion that it was for the jury to determine whether in this situation the engineer's testimony that the driver of the car saw the train was merely a conclusion. It was likewise for the jury to determine the credibility of the engineer's testimony to the effect that the driver of the car saw the train, and with full knowledge of its approach, drove upon the track

in its path contrary to human instincts of self-preservation.

On the issue as to whether the statutory signals were given, the appellant contends that the evidence on behalf of the appellees is negative testimony and, therefore, insufficient to overcome the positive testimony of appellant's train crew. It appears from the record that the witnesses who testified in behalf of appellees that the statutory signals were not given were so situated that in the ordinary course of events they would have heard the signals if they had been sounded. This evidence was, therefore, sufficient to warrant the jury in finding that the signals were not given. "Testimony that a fact did not occur, given by a witness 'so situated that in the ordinary course of events he would have heard or seen the fact that it occurred,' is sufficient to warrant a jury in finding that the fact did not occur." Columbus & Greenville R. Co. v. Lee, 149 Miss. 543, 115 So. 782, 784.

We are also of the opinion that the evidence was sufficient to justify the court in submitting to the jury the question as to whether the failure of appellant to give the statutory warning signals proximately caused or contributed to the injury and death of the decedent. The jury might reasonably have concluded from all of the facts in the case that the warning signals were not given and that if they had been given they would have served to warn the driver of the car of the approaching train and thus avoided the collision at the crossing. In the case of Gulf & Ship Island R. R. Co. v. Simmons, 153 Miss. 327, 121 So. 144, 145, which involved a question of the liability of the railroad company for alleged failure to give the statutory warning signals, this Court said: "* * * if it would be a reasonable conclusion upon all of the facts in this case that, had the signals been given, the traveler by virtue of the warning might have avoided the danger of injury, then the failure to give the statutory signals may be considered as the proximate cause of the injury or death that results."

For the reasons hereinbefore stated, we think the trial court was correct in refusing appellant's requested peremptory instruction, and in overruling appellant's motion for a new trial upon the ground that the verdict is contrary to the overwhelming weight of the evidence.

Appellant also complains that the trial court erred in refusing the following requested instruction: "The court instructs the jury that the railroad train involved in this accident was traveling at a lawful speed as it approached this crossing." We are of the opinion that this instruction under the facts of this case was calculated to mislead the jury and was, therefore, properly refused. The speed of the train was not immaterial in determining whether or not the failure to give the statutory warning signals proximately caused or contributed to the injury. The proof for appellees showed that the train was traveling at a rate of speed of from 60 to 70 miles per hour. If it had been traveling at a slower rate of speed the car in which appellees' decedent was riding would, in all reasonable probability, have crossed in safety. The complained of instruction would have led the jury to believe that the speed of the train was immaterial to the issues involved. No prejudice, however, resulted to appellant in the refusal of the instruction in view of the following instruction which was granted to appellant: "The court instructs the jury that you can not return a verdict against the defendant in this case predicated upon the speed at which the defendant's train was proceeding at the time the automobile in which the plaintiffs' intestate was riding first came into the view of those operating the defendant's train."

Appellant further urges as a ground for the reversal of the judgment the action of the trial court in refusing its request for the following instruction: "The court instructs the jury that you can not allow any damages in this case on account of the alleged pain and suffering of the deceased." Appellant's contention is that the decedent was rendered unconscious as a result of his

injuries and so remained until his death, and was, therefore, incapable of suffering pain. Appellant relies principally upon the case of Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552, wherein the court based its decision upon undisputed evidence that the deceased was unconscious when witnesses reached him immediately after the accident and so remained until his death a short time thereafter. No symptoms of pain were manifested in that case. We do not find a similar state of facts in the case at bar. Witnesses said that the decedent was unconscious when he was removed from the scene of the accident to the hospital. His mother saw him at the hospital about 11 o'clock A.M., which was shortly after his arrival there. She testified affirmatively that he suffered and that he could be heard all over the hospital; that she held his hand and talked to him, and that she thought he knew her. She further testified that he continued to be heard all over the hospital until the doctor "doped" him. Dr. Weatherford testified that he saw him on arrival at the hospital; that he was profoundly unconscious; that he could not say he was not suffering; that he went into convulsions; that groans were an evidence of pain. On the other hand, Dr. Thompson testified that he saw him about one and a half hours after he reached the hospital and that at that time he was unconscious, and in the witness' opinion, was incapable of suffering pain; that he had a skull fracture and head injuries; that he died about seven hours after his injuries. At the time Dr. Thompson saw him, he had been "doped" according to the testimony of his mother. In view of this conflicting evidence, we think the trial court was correct in refusing to instruct the jury that no award of damages could be made for pain and suffering and in submitting this issue for the determination of the jury. The requested instruction was a peremptory instruction on the issue of pain and suffering. Therefore, in considering the request for such instruction, the court was required to take as true the evidence, and all in-

ferences reasonably deducible therefrom, favorable to the appellees. Bankston v. Dumont, 205 Miss. 272, 38 So. (2d) 721; Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613. The evidence thus to be taken as true was the testimony of the decedent's mother that he suffered, that he could be heard all over the hospital until they "doped" him, that she held his hand and talked to him, and that she thought he knew her, and the testimony of Dr. Weatherford that groaning was an evidence of pain and suffering. No instruction was given to the jury specifically pointing out the element of pain and suffering as an item of damages. The issue was one for the jury and we find no prejudicial error in the trial court's action in refusing the requested peremptory instruction on this issue.

Appellant also complains that the amount of the verdict is excessive. The decedent was a child of the age of 12 years. He left surviving him his father, aged 34 years, his mother, aged 33 years, his brother, aged 11 years, and his sister, aged 5 years. His relationship with his parents and his brother and sister was affectionate and devoted. In addition to other elements of damages proper to be allowed, it is particularly difficult to estimate in dollars and cents the loss of the companionship and society of a loved one. The amount which may be just is largely a question which is left to the sound discretion or determination of a jury, unaffected by bias, prejudice, or passion. There is no proof of contributory negligence chargeable to the decedent and after a careful consideration of all of the elements of damages which the jury was warranted in considering under the evidence in this case, we are unable to say that the amount of the verdict is not sustained by the evidence or that it is so grossly excessive as to evince bias, prejudice, or passion.

We have reviewed with care the other assignments of error and find no reversible error therein.

The judgment of the court below is accordingly affirmed.

Affirmed.

All Justices concur.

**Alexander, J.**, (specially concurring).

I concur in the result here reached. However, I assent reluctantly to an approval of the action of the trial court in refusing the defendant's instruction which forbade the jury to find, and include in its award, damages for pain and suffering by the deceased. We have heretofore tested this right by examining whether the victim regained consciousness. There should never be such an award unless there is conscious suffering. The burden of proof was, of course, on the plaintiffs. The testimony on this point was, to say the least, meager, and the testimony of the attending physicians was far from positive.

I am authorized to state that Justice Roberds concurs in these views.