Louisville & Nashville Railroad Company *v.* Price

No. 42155　　　February 12, 1962　　　137 So. 787

*Colmer, McGehee & Colmer,* Pascagoula; *Hand, Arendall, Bedsole, Greaves & Johnson,* Mobile, Alabama, for appellant.

*Cumbest & Combest,* Pascagoula, for appellee.

102

KYLE, J.

This litigation arose in this way: William Clifford Price, on October 8, 1960, while driving his automobile south on the Bayou Chico Road in Jackson County, intent upon crossing the railroad track of the Louisville & Nashville Railroad Company at the public crossing thereon, was struck by a train of said railroad. In his declaration, he charged that the employees of the Railroad Company were operating the train at a careless and negligent rate of speed over a dangerous crossing, without keeping a reasonable and proper lookout for vehicles on the highway, and without complying with the provisions of Section 7777 of the Miss. Code 1942, Rec., namely, by ringing the bell continuously, or blowing the whistle or horn at repeated intervals, for the distance of 300 yards from the crossing, until the crossing was passed. As a proximate result of such alleged negligence, he charged that he sustained serious and permanent injuries for which he demanded judgment in the sum of $10,000.

The answer of the defendant denied each and every allegation of the declaration, and gave notice that it expected to show that the plaintiff failed to exercise due care and was guilty of negligence which proximately contributed to the accident.

The issue was submitted to the jury, and it found a verdict for the plaintiff and assessed his damages at $8,000. From the judgment entered thereon, the Railroad Company appealed.

The plaintiff testified substantially as follows: Tall weeds and bushes obstructed his view as he approached the crossing. He expected to cross from north to south, and was driving very slowly. He stopped his car a few feet from the crossing and looked both ways. He neither saw nor heard the train. When the front part of his car got upon the track, the whistle blew for the first time. It was then right on him, less than 100 feet away, possibly 40 to 50 feet. It was a violent blast of the horn, too late for him to do anything. He did not hear the bell ring unless it did so just as the impact with his vehicle occurred. He put his car in reverse and tried to back away; but before he did so, his car was hit by the train.

Bobby Hinson testified that he was in his car and had just passed over the railroad from the south and had stopped about 20 or 25 feet north of the crossing. He had seen the train approaching from the west as he crossed the track, but he did not hear the whistle or horn blow until it was within 100 feet of the crossing. He did not hear the bell ring at all. He said that he saw Price as his car passed him very slowly; that Price looked east but not west; and that he did not stop. Miss Mary Ethel Moore, who was Hinson's companion at the time, testified that she saw the Price car as it passed. The first time she heard the train whistle or blow, the train was within 150 feet of the crossing. She did not hear the bell ring at all.

During the cross-examination of plaintiff, the Railroad Company submitted several photographs of the crossing. The plaintiff pointed out certain inaccuracies therein. Howard Ellzey, a county patrolman, as a witness for the plaintiff, testified that tall weeds and shrubs

obstructed the view to some extent as one approached the crossing from the north. However, he was of the opinion that the photographs were fair representations of the views of the crossing.

The engineer, fireman and brakeman of the train crew testified that the signals, both by the ringing of the bell and the blowing of the whistle or horn, were given, as required by the statute; that the bell was rung continuously for more than 300 yards before the train reached the crossing, and that the whistle or horn was also blown at the 300 yard post and was blown at repeated intervals until the train had passed over the crossing, as required by the statutes; and that the Price car, although traveling at a slow rate of speed, ran upon the crossing when it was too late to stop the train or prevent the collision.

The appellant contends that the court erred in refusing its requested peremptory instruction because (1) negligence was not established by a preponderance of the evidence, and (2) the alleged negligence was not shown, by the proponderance of the evidence to be the proximate or contributing cause of the appellee's injuries.

Section 7777, Code of 1942, Rec., provides, as follows: "Every railroad company shall cause each locomotive engine run by it to be provided with a bell of at least thirty pounds weight, and a whistle or horn which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung or the whistle or horn to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any public highway or municipal street, and the bell shall be kept ringing continuously or the whistle or horn shall be kept blowing at repeated intervals until said crossing is passed."

In Mississippi Cent. R. Company v. Smith, 173 Miss. 507, 154 So. 533, 159 So. 562, this Court, dealing with

the above section and Section 7778 of the present Code, said: "*  *  * *our court, in construing the statute,* (Secs. 7777-7778) *holds that its violation is negligence on the part of the railroad company, and if such negligence is the proximate cause of the injury the company is liable.*" (Emphasis supplied.) The opinion cited the three following cases: Louisville & N. R. Co. v. Crominarity, 86 Miss. 464, 38 So. 633; Southern R. Co. v. Murray, 91 Miss. 546, 44 So. 785; Skipwith v. Mobile & Ohio R. Co., 95 Miss. 50, 48 So. 964. On appeal, the validity of these sections was set at rest by the Supreme Court of the United States. 295 U. S. 718, 79 L. ed. 1673, 55 S. Ct. 830.

■■■ ■ Although the plaintiff and his two witnesses said that they did not hear the whistle or horn until the train was within 50 to 150 feet of the crossing and that they did not hear the bell ring at all, they were in position to hear, if the whistle had been blown or the bell rung. Such evidence is sufficient to make an issue for the jury as to whether the statutory signals were given. Columbus and Greenville R. Company v. Lee, 149 Miss. 543, 115 So. 782; Gulf & Ship Island R. R. Company v. Simmons, et al., 153 Miss. 327, 121 So. 144; Yazoo & M. V. R. Company v. Beasley, et al., 158 Miss. 370, 130 So. 499; Yazoo & M. V. R. Company v. Pittman, 169 Miss. 669, 153 So. 382; Louisville & N. R. Company v. Whisenant, et al., 214 Miss. 421, 58 So. 2d 908. This is true even though the train operatives or others may testify that the whistle or horn blew and the bell rang in strict compliance with the statute.

The plaintiff was eighty-one years of age. The witness said that he was driving very slowly. There is no basis for a conclusion that he was trying to beat the train over the crossing. As to the question of proximate or contributing cause, it may well be said as this Court did say in Gulf and Ship Island Railroad Company v. Simmons, supra: "The law as stated *  *  * in all the

opinions of our court dealing with the aforesaid statute, a right to insist that these signals be given, not only (Sec. 7777, supra) is that travelers on a highway have that they may be warned thereby to keep off the track, but that they may extricate themselves and their property from a position of danger before the arrival of the train; and further that, *if it would be a reasonable conclusion upon all the facts in the case that, had the signals been given, the traveler by virtue of the warning might have avoided the danger of injury, then the failure to give the statutory signals may be considered as the proximate cause of the injury or death that results."* (Emphasis supplied.)

The *underlined* part of the above-quotation was cited with approval in Louisville and Nashville Railroad Company v. Whisenant, supra.

■■ ■ The appellant has assigned a number of other alleged errors of the trial court, but it is deemed necessary to reply to only one of such assignments, namely, that the verdict of the jury is so grossly excessive as to evince bias, passion and prejudice.

The plaintiff was thrown out of his automobile. He said that he suffered intense pain in his back when he tried to straighten up. He also said that he has suffered from that condition ever since. There were no other injuries except bruises. He stayed in the hospital nine days. Dr. Emile Baumhauer saw the plaintiff in the emergency room of the hospital shortly after the accident, observed that he was pretty well bruised up, and heard his complaints as to discomfort and pain in his back. From the examination, the doctor made a diagnosis of severe sprain of the back, involving the upper lumbar area and the lower part of the thoracic spine. In response to the question as to whether the plaintiff will, in the opinion of the doctor, continue to have pain with his back injury as long as he lives, the witness said: "I think he probably will, yes." The doc-

tor knew that his patient had arthritis of the spine prior to this time, but said that there had been no complaint of pain until after the accident. On cross-examination, the doctor said that there were no fractures or dislocations, but that he had treated the plaintiff for a prostatic condition which caused some pain in the low lumbar area, and that he still has that trouble.

Of course all questions of negligence and contributory negligence are for the jury to determine. Sec. 1455, Miss. Code 1942, Rec. The appellant asked for, and was given, an instruction on contributory negligence. From the photographs and practically all of the testimony, except that of the plaintiff himself, it is inescapable that the negligence of the plaintiff substantially contributed to the collision and his resulting injuries. In the light of all of the evidence, it must be said that the jury either ignored the instruction on contributory negligence, or paid little heed thereto. Under all of the circumstances, a verdict in excess of $5,000 is grossly excessive and savors of bias, passion and prejudice.

If the plaintiff, within ten days, will enter a remittitur in the amount of $3,000, the judgment will be affirmed for $5,000; otherwise the cause will be reversed and remanded for a new trial on the question of damages only.

Affirmed with remittitur; otherwise reversed and remanded for a new trial on the amount of damages only.

*Lee, P. J.*, and *Gillespie, McElroy* and *Jones, JJ.*, concur.