BRADY, Justice:
This is an appeal from a directed verdict granted appellee by the First Circuit Court District of Jones County on a suit *471 for personal injuries received by appellant while a passenger in an automobile which collided wtih the side of a locomotive of the appellee, Gulf, Mobile & Ohio Railroad Company. When the appellant rested his case, the trial court, on appel-lees’ motion, directed a verdict for ap-pellees and entered judgment, from which the appellant prosecutes this appeal.
There is but one issue in this cause, and that is: Did the trial court err in directing a verdict on behalf of the appellees?
The undisputed evidence in this cause offered by the appellant and his witnesses clearly establishes the following facts.
On January 23, 1962, appellant, who was on a joint business venture with a fellow employee, James Pace, was traveling in a 1960 Rambler station wagon driven by Mr. Pace. The weather was cold and cloudy, and it was misting rain. Appellant and Mr. Pace that morning had driven from Meridian, Mississippi, to Union, Mississippi, on their joint business mission, and were engaged in returning from Union to Meridian at a speed of approximately forty to fifty miles per hour. The asphalt highway, No. 494, upon which they were traveling, was tortuous, wet and somewhat slippery.
The record shows that they were traveling in a southerly direction and were proceeding down a slight hill. They met and passed an oncoming car approximately two hundred feet from the tracks. Mr. Pace, the driver of the car, did not know how far the straight road continued to the tracks. The record discloses that there are three railroad warning signs situated at various distances from the crossing proper. Neither the appellant nor Pace knew how many railroad signs were there, and they never saw any of the signs. The appellant was asleep until just before the crash and therefore he did not see or know anything about the attendant circumstances.
Mr. Pace testified that when he was about one hundred feet from the crossing he saw the train; that it was about the same distance from the crossing that he was, and that they met at the crossing almost at the same time. Mr. Pace testified that he did not hear a whistle or bell signal, and that he did not see the burning headlight of the engine.
Mr. Pace further testified that as soon as he became aware of the train, he immediately put on his brakes and endeavored to turn to the left into what he thought was a little side road close to the tracks. However, there was no road at this place. He testified that his car began skidding, and that he was not able to turn the car into the side road. He estimated that the train and his car were traveling at about the same rate of speed, because he determined that they were about the same distance from the crossing. He concluded that the speed would have to be about the same because of the collision occurring as it did.
The record discloses that once he turned his car to the left, he never made any effort to turn it to the right, and that the right front portion of his car struck the side of the engine, twenty-one feet from the front. The record discloses that after the car started to skid he did not let up on his brakes or turn his steering wheel back to the right. He stated he did not know whether he ever turned the wheel back to the right and he did not know whether there was any movement of the tail end of the station wagon which he was driving. Pie denied that the car was out of control; however, he stated that he did not know what happened except that he was making thirty miles per hour when the right front of his car ran into the side of the engine. He admitted that he was in error about there being a roadway along the side of the track into which he attempted to turn. He stated that he looked to the right and to the left after passing the approaching car, but he did not see the railroad stop signs on the day of the accident; that he did not look beyond the tracks.
*472 Appellant placed Mr. E. H. Swetman, one of tlie appellees, on the stand as an adverse witness. Appellee Swetman, the engineer, testified he saw the appellant’s car when he was approximately eighty yards from the crossing, but that when he saw this car it was twice the distance from the crossing that the engine was. He testified that as the engine approached the crossing he could see for a distance of one hundred fifty to two hundred yards up the road upon which appellant was traveling. There is no statutory limitation of the speed at this railroad crossing, but Swetman testified the speed authorized there according to appellee’s rules is thirty miles per hour, with a variation of five miles, and that, at the time, he was traveling approximately thirty to thirty-two miles per hour.
Seven photographs were introduced into evidence and these photographs materially contradict many of the statements made by Mr. Pace. Appellee Swetman testified, without contradiction, that after he realized Pace was not going to stop, he was unable to reduce the speed of the train within a distance of two hundred feet; that when he applied his service brakes the train could not have been going as fast as forty to forty-five miles per hour, as estimated by the appellant. It is undisputed that when Mr. Pace’s automobile struck the side of the engine it was traveling thirty miles per hour.
Round yellow railroad warning signs near the right driveway were clearly shown in the photographs and could and should have been seen by Mr. Pace when he was descending the slight hill. The sign, “Mississippi Law Stop,” also could and should have been seen by Mr. Pace for a considerable distance before he came to it. In addition, there were crossbar signs likewise indicating a railroad crossing. The photographs which were admitted indicate that the round, yellow railroad warning sign is located at least several hundred feet north of the track, and if Mr. Pace had been driving between forty and fifty miles per hour, he would have had ample time, after observing the sign, to take necessary corrective driving precautions to avoid a collision. Even if he did not see the round, yellow sign, he could have seen the crossbar and the “Mississippi Law Stop” sign after he started his descent down the hill and began his level approach toward the tracks.
Mr. Pace admitted that he did not make any effort whatsoever to reduce the speed of his car until he was within a hundred feet of the railroad crossing. He further concedes that he was driving on a very wet, slick highway. He admitted further that he applied his brakes with full force, without letting up on them, after he had started to skid. He testified that he attempted to turn into a driveway leading to a farm house, but the photographs clearly show that the only driveway is a considerable distance from the railroad tracks. The photographs do not indicate anything which remotely appears to be a driveway near the tracks. This indicates that Mr. Pace saw the train before he arrived at the point opposite the driveway. The proof was ample that Mr. Pace, in the exercise of ordinary care, could and should have seen the warning signs which would have alerted him to the fact that a railroad crossing was in his path.
The physical damage which the station wagon did in breaking the cast iron ladder and in crushing the battery box on the side of the engine indicates that Mr. Pace’s automobile struck the engine with considerable speed and force. Mr. Pace’s testimony clearly shows that he was skidding wildly on the wet asphalt because of his speed and his failure to keep a proper lookout and to keep his car under proper control,
The photographs do not indicate the distance of visibility up the railroad track from the highway. They nevertheless clearly show that the distance of visibility was considerably more than the hundred foot distance appellant testified he and the engine were from the crossing when he first saw the engine.
*473 Turning now to the basic question of whether the trial court erred in directing the verdict on behalf of appellees, we are faced with this single issue: Was the alleged failure of the engineer to sound the •customary warnings for the requisite distance of three hundred yards before entering the crossing a proximate cause of the accident ? In other words, was there causal connection between the injuries and the alleged negligence on the part of the railroad in failing to give the statutory signals ?
The issue which we are now considering has been decided in the following cases: Columbus & Greenville R. Co. v. Lee, 149 Miss. 543, 115 So. 782 (1928); Gulf, M. & N. R. R. v. Hudson, 142 Miss. 542, 107 So. 369 (1926); Grantham v. Gulf & S. I. R. Co., 138 Miss. 360, 103 So. 131 (1925); Gulf & S. I. R. Co. v. Carlson, 137 Miss. 613, 102 So. 168 (1924); Yazoo & M. V. R. Co. v. Lucken, 137 Miss. 572, 102 So. 393 (1924); Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 54 So. 890 (1910). While the rule of law is not beyond review or criticism, and although the sleeping appellant did not hear the statutory signals, nevertheless, under our decisions the fact that Mr. Pace, the driver of the car, testified that he did not hear the whistle blowing or the bell ringing as the train approached the crossing, was sufficient to create an issue of fact for determination by the jury.
Mississippi Code Annotated section 7777 (1956) requires every railroad locomotive engine to ring its bell or blow its whistle or horn at a distance of at least three hundred yards from the place where the railroad crosses over any public highway or municipal street. The bell shall be kept ringing continuously or the whistle or horn shall he kept blowing at repeated intervals until the crossing is passed.
In Louisville & Nashville Railroad Co. v. Price, 243 Miss. 99, 137 So.2d 787 (1962), we held that the testimony of Mr. Price, which was to the effect that he did not hear the whistle blown or the bell rung and that he was in a position to have heard them if these warnings had been given, was sufficient to take the case to the jury on the issue of whether or not the requisites of section 7777 had been complied with. New Orleans & Northeastern R. R. Co. v. Ready, 238 Miss. 199, 118 So.2d 185 (1960); Columbus & Greenville R. R. v. Lee, supra.
In the Price case, supra, we pointed out that travelers on a highway have a right to insist that these signals be given, not only that they may be warned thereby to keep off the tracks, but that they may extricate themselves and their property from a position of danger before the arrival of a train. In that case we also pointed out:
(1)f it would be a reasonable conclusion upon all the facts in the case that, had the signals been given, the traveler by virtue of the warning might have avoided the danger of injury, then the failure to give the statutory signals may be considered as the proximate cause of the injury or death that results. (243 Miss, at 107, 137 So.2d at 790.)
It was for the jury to say whether the alleged negligence on the part of the engineer of the appellee to give the statutory signals as required was or was not a proximate cause of the automobile being struck by the train. New Orleans & Northeastern R. Co. v. Phillips, 252 Miss. 438, 172 So.2d 414 (1965); Illinois Cent. R. Co. v. McDaniel, 246 Miss. 600, 151 So.2d 805 (1963); New Orleans & Northeastern R. Co. v. Ready, supra. It follows that the question of whether or not the bell or whistle on appellee’s engine was sounded in compliance with the statutory requirements of section 7777 was squarely within the province of the jury to determine. It was likewise within the province of the jury to determine whether or not the appellee’s failure to ring the bell or sound the whistle was a proximate cause of appellant’s injuries. The speed of the train at the crossing in an unrestricted zone is not involved in the issue of negligence.
*474 It is appropriate for us to point out that appellant in his declaration specifically charged that an extremely dangerous and hazardous condition existed and prevailed around and about the said railroad crossing and that the appellee in the exercise of reasonable care knew or should have known the dangerous characteristics of said crossing and that the individual appellee, E. H. Swetman, should have known that the speed at which he was operating the locomotive at the time and place was extremely hazardous and in excess of that speed dictated by reason and prudence. It follows, therefore, that the appellant should have been permitted to offer evidence to establish his contention that a dangerous and hazardous condition existed at the crossing at the time of the collision. There are numerous decisions which treat this problem, among which are Illinois Central Railroad Co. v. Williams, 242 Miss. 586, 135 So.2d 831 (1961); Boyd v. Illinois Central Railroad, 211 Miss. 409, 52 So.2d 21 (1951). We expressly refrain from determining whether the facts as reflected in the record are sufficient to establish that a dangerous and hazardous condition existed.
The record discloses that the appellant’s driver was guilty of abundant contributory negligence, but since the case is being reversed and remanded for the errors assigned, and since appellees did not put on all their evidence, we are not called upon now to consider or decide whether a verdict based on the negligence urged here would be against the overwhelming weight of the evidence. We will cross that bridge when and if it is properly presented to us.
For the foregoing reasons, this cause is reversed and remanded.
Reversed and remanded.
GILLESPIE, P. J., and JONES, PATTERSON and INZER, JJ., concur.