GILLESPIE, Presiding Justice:
Edwin W. McLaurin, appellee, sued Walters Plumbing Company, appellant, to recover damages for personal injuries. The jury returned a verdict for plaintiff. Walters Plumbing Company appealed to this Court.
Appellee was employed by a subcontractor engaged in doing the carpentry work in the construction of a service station. Using two A-frame ladders appellee erected a scaffold upqn which to work. He was engaged in installing sections of siding on the service station. Boards were placed under each of the four feet of the ladders so that the ladders would not sink into the ground. A board was then laid across the top of the two ladders so as to afford a scaffold to support appellee and his co-worker. Appel-lee was performing his work while standing *867 on this scaffold about twelve or fourteen feet above the ground when appellant’s employee began cutting a ditch across the service station lot, using a mechanical ditch digger. Appellee had his back to the ditch digging machine. One of the A-frame ladders supporting the scaffold on which appel-lee was working rested on an area under which appellant’s employees had laid pipes several days before. These pipes were covered with earth. Appellant’s employee who was operating the ditch digger forgot about the pipes that he had helped lay several days before and caused the ditch digger to strike the pipes, thus dislodging the support of one of the A-frame ladders. The scaffold fell to the ground. Appellee fell on his leg, side and back, resulting in injuries.
The court peremptorily instructed the jury to find for the plaintiff. Appellant assigns this as enor, contending that the trial court erred in thus peremptorily instructing the jury. We have carefully considered the testimony in this case and the authorities relied upon by appellant and are of the opinion that the trial court properly gave a peremptory instruction in favor of the plaintiff. Appellant’s employee had participated in laying the pipes which had been covered with earth. There was nothing to prevent him from seeing the scaffolding resting upon the area under which the pipes had been laid. According to appellant’s employee who was operating the ditch digger, he forgot that the pipes were there. We are of the opinion that negligence was shown as a matter of law.
Appellant next contends that the verdict of the jury is so excessive that it evinces bias, passion and prejudice on the part of the jury. We are of the opinion that this assignment is well taken.
Appellee was SI years old at the time of his injury and had a further life expectancy of 22.6 years. The verdict was for $31,500.-00.
Appellee testified that he was making $3 per hour. He said that when he fell he was dazed and went to the hospital; that his knees were skinned, his left side was bruised, and his back was hurt. He saw Dr. White immediately after he was injured and Dr. White gave him some medicine for pain and sent him home. He went back oh the job and worked a week or ten days but did very little work, “just piddled around.” Dr. White continued to treat appellee and later referred him to Dr. Holder, an orthopedic surgeon, who ran a myelogram and referred him back to Dr. White, whose treatment consisted of traction, nerve tablets, relaxing tablets, and shots. At the time of his injury appellee was wearing a back brace. Appel-lee stated that he had trouble with his back in 1960 but that he had fully recovered, worked regularly and was wearing the corset or brace for safety purposes, but did not wear it regularly. Appellee stated that because of his back he is now unable to work and has not worked since the job on the service station ended. He states that he is nervous and irritable, his back hurts, and he cannot rest at night without the aid of drugs, which he takes most of the time.
Dr. Boyce White, a general practitioner, saw the appellee on the 11th day of February, 1964, the day appellee fell from the scaffold. Appellee was complaining of pain in his back, left knee and left leg where he had suffered contusions and abrasions. Muscle relaxants and medicine for pain were prescribed. Appellee returned to Dr. White on February 14 and he was still sore but improved somewhat. He again saw ap-pellee on the 21st day of February, 1964, and medication was continued. At that time appellee was having muscle spasms in his back. Dr. White diagnosed appellee’s trouble as a severe lumbosacral sprain and there was some question in his mind about disk damage or nerve pressure. Dr. White then referred appellee to Dr. Jeff Holder, an orthopedic surgeon, after which Dr. White continued to treat appellee. Dr. White was of the opinion that appellee had a ruptured disk and that it was causing compression on the nerve at L-4 or L-5. Appellee had radiation of pain into his legs, *868 indicating nerve root pressure. Dr. White was of the opinion that appellee could not do any sort of work that required lifting, bending, or climbing or anything that required use of his back. He prescribed a lumbosacral support, a canvas type corset with steel brace. Dr. White had never seen appellee prior to February 11, 1964, the date he fell from the scaffold, and he did not know whether the ruptured disk existed prior to the fall on February 11, 1964.
Dr. James Clark Bass, Jr., an orthopedic surgeon, testified that he first saw appellee for an injury to his knee and thereafter saw him many times in regard to his back. He operated on appellee’s knee for bursitis in 19S7. He first saw appellee in connection with his back on September 22, 1960. He was then complaining of pain in his back with radiation of pain into his right leg, a symptom of disk trouble. He thereafter saw appellee numerous times in September, October, November and December of 1960 and from January to March, 1961. At the time appellee gave him a history of a back injury in September, 1960. All of the treatment in this connection was conservative. Appellee was hospitalized on April 29, 1961, in connection with his back and pain in his right leg. He was discharged from the hospital on May 5, 1961, at which time appellee stated that his back was so painful that he could not work. Dr. Bass continued to see appel-lee and he was again hospitalized on November 28, 1962, complaining of pain in his back radiating into his leg. He was treated conservatively and released from the hospital on December 9, 1962. Dr. Bass again saw appellee on February 26, 1963, when he examined appellee at the request of the Vocational Rehabilitation Service at which time appellee stated that he could not work on account of the pain in his back radiating down into his right leg. Dr. Bass was of the opinion that the symptoms suggested disk trouble and a laminectomy was recommended. Since that time Dr. Bass has not seen him professionally. Dr. Bass is a partner of Dr. E. J. Holder, another orthopedic surgeon. Dr. Bass stated that he rated ap-pellee as having a ten percent disability of the body as whole in 1961.
Appellee was referred to Dr. E. J. Holder by Dr. White on March 19, 1964, and Dr. Holder’s diagnosis was protruding interver-tebral risk at the lumbosacral joint. with nerve root pressure on the right. On Dr. Holder’s recommendation a myelogram was done on April 29, 1964, which confirmed the diagnosis of protruding disk and a lumbo-sacral exploratory operation was recommended. Dr. Holder stated that he had a voluminous file on appellee which showed that on December 5,1962, he saw appellee in the hospital when he was being treated by Dr. Bass at which time he believed that ap-pellee needed an exploratory operation for a protruding intervertebral disk at the lumbo-sacral joint. The diagnosis made by Dr. Holder on December 5, 1962, was the same as the diagnosis made by Dr. Holder after the injury of February 11, 1964, and Dr. Holder stated that appellee’s complaints and condition were essentially the same after February 11, 1964, as they were before that time. Dr. Holder stated that people with protruding or ruptured disks have times of remission and times when the symptoms are acute. If appellee underwent an operation Dr. Holder was of the opinion that appel-lee’s back would be improved 85 to 90 percent, which is the average estimated improvement.
The record shows that appellee was injured on February 28, 1957, while working for Dan Hall Construction Company at which time, according to appellee, a beam fell on him. According to the affidavit appearing in the file of the Workmen’s Compensation Commission in connection with appellee’s claim for the February 28, 1957, injury, appellee made an affidavit that he fell from a scaffold and that the fall aggravated his ruptured disk suffered a number of years prior thereto which was never corrected by surgery.
The record also shows that while working at the Marion Motor Court on July 6, 1960, appellee sustained injury. In his claim for *869 workmen’s compensation for that injury, appellee signed a notice of injury wherein it was stated that his back was injured while lifting a post under an awning. He re-injured his back on September 14, 1960.
The record also shows that while working for Charles Whatley on August 9, 1962, ap-pellee was injured when a scaffold on which he was working broke and appellee fell. Claim for workmen’s compensation benefits was also made for these injuries.
In the argument that the verdict is excessive appellant cites Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965), Walker v. Polles, 248 Miss. 887, 162 So.2d 631 (1964), Jackson v. Swinney, 244 Miss. 117, 140 So.2d 555 (1962), Louisville and Nashville Railroad Co. v. Price, 243 Miss. 99, 137 So. 2d 787 (1962), Index Drilling Company v. Williams, 242 Miss. 775, 137 So.2d 525, 8 A. L.R.3d 323 (1962). Appellee cites no authority in support of the verdict and says that every case for unliquidated damages must be settled on the particular facts and circumstances, that no two cases are alike, no two injuries are identical, and that every person who sustains an injury to his body is damaged in a different amount.
Appellant argues that the medical proof is undisputed that appellee was in essentially the same condition after the February 11, 1964, injury as he was before that time, and that he is entitled only to nominal damages. With this we do not agree.
The proof is undisputed that appellee had a ruptured or protruding disk long before the injury suffered on February 11, 1964. He was wearing a back brace when he sustained the last injury. A careful study of the record shows overwhelmingly that the present condition of appellee is for the most part the result of former injuries, but that the last injury contributed to his condition in some degree. This case is similar in some respects to Dennis v. Prisock, supra, in that in both cases the plaintiff had received numerous previous injuries to the back. We are of the opinion that the ver-, diet is against the overwhelming weight of the evidence insofar as the amount is concerned. Appellee’s complaints at the time of trial were the same as those complained of after previous injuries. The disabilities of appellee following the February 11, 1964, injury are not connected with requisite certainty to the last injury to support the verdict in this case.
Appellant also assigns as error the refusal of the trial court to admit in evidence records of amounts paid appellee in settlement of compensation claims made by appellee against former employers in connection with injuries to the same area of the back which appellee contends was injured in the fall of February 11, 1964. The main complaint of appellant under this assignment of error is that the trial court refused to allow appellant to introduce in evidence a petition filed with the Workmen’s Compensation Commission which was signed by ap-pellee stating that he had received compensation up to that time, for disability sustained in the two injuries in 1960, in the amount of $1,330 and medical benefits in the amount of $691.45, and that he desired to accept a final lump sum settlement of $6,000. The order approving the lump sum settlement was also offered by appellant and objection of appellee was sustained. Appellant contends that these documents from the files of the Workmen’s Compensation Commission were admissible because they tended to impeach appellee’s claim that his present condition resulted from the injury of February 11, 1964, and to show that appellee had been compensated in the past for substantially the same injury for which he sought damages in the present suit. We are of the opinion that all of the Workmen’s Compensation Commission’s file that showed the ap-pellee’s previous claim of injuries to the same part of the body involved in the present suit, the extent of such injuries and disability, and the amount of compensation received therefor, should be admissible. See Baxter v. Rounsaville, 193 So.2d 735 (Miss.1967). Such evidence tends to show that all of appellee’s disability after the injury of February 11, 1964, was not attributable to *870 that injury. Evidence of a compromise or an attempt to compromise the suit between appellants and appellee would obviously not be admissible. The evidentiary question under discussion is also unlike that involved when an injured employee, who is drawing or has drawn compensation benefits, institutes a third party action against the wrongdoer who caused the injury, in which case the wrongdoer may not show what compensation was paid the employee. Coker v. Five-Two Taxi Service, 211 Miss. 820, 52 So.2d 356, 835 (1951).
We are of the opinion that if the verdict had been for a sum not exceeding $20,000, we would have affirmed. Accordingly, since the errors below involved the damages only, the appellee shall have the option of entering a remittitur of $11,500, in which event the judgment will be affirmed for $20,000; otherwise, the case will be reversed for a new trial on the issue of damages only.
Affirmed on condition of remittitur; otherwise .reversed and remanded for new trial on the issue of damages only.
RODGERS, JONES, BRADY and SMITH, JJ., concur.